ALEXANDER M. CHEMERS, CA Bar No. 263726
zander.chemers@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendant
L&W SUPPLY CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALIPH CHENEVERT, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiff,<br><br>v.<br><br>L & W SUPPLY CORPORATION, a Delaware corporation; AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:25-cv-00709<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT**<br><br>[*Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of Casie LaChance, Lisa Indgjer, and Alexander Chemers in support of Removal*]<br><br>Complaint Filed: January 13, 2025<br>Trial Date: None |

1

Case No. _____

DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF KALIPH CHENEVERT AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant L&W Supply Corporation ("L&W")[1], by and through its undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) Defendants are citizens of a state different than Plaintiff; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied.

The foregoing facts were true when Plaintiff filed his Class Action Complaint and Enforcement Action Under PAGA ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I.   THE STATE COURT ACTION

1.   Plaintiff filed his Complaint on January 13, 2025 in the San Bernardino Superior Court ("Action"). The Action was assigned Case No. CIVSB2501423. *See* Declaration of Lisa Indgjer ("Indgjer Decl."), ¶ 3; Ex. A (Complaint). A copy of the Complaint is attached as **Exhibit A**.

2.   Plaintiff's Complaint asserts twelve causes of action for: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Unpaid Overtime; (4) Unpaid Minimum Wages; (5) Non-Compliant Wage Statements and Failure to Maintain Payroll Records; (6) Wages Not Timely Paid Upon Termination; (7)

---

[1] L&W's parent company, American Builders & Contractors Supply Co., Inc. ("ABC"), has also been named as a defendant in this action. Because Plaintiff has not yet served ABC, this Notice of Removal is submitted by L&W only. As used here, "Defendants" refers to both L&W and ABC.

DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT

Failure to Timely Pay Wages During Employment; (8) Failure to Provide Reporting Time Pay; (9) Unreimbursed Business Expenses; (10) Claim for Civil Penalties for Violations of California Labor Code, pursuant to PAGA, §§ 2698, *et seq.*; (11) Unlawful Business Practices; and (12) Unlawful Business Practices.

3.  Plaintiff served his Complaint on L&W's agent for service of process on February 13, 2025. *Id.* ¶ 4, Ex. B (proof of service). A copy of the proof of service is attached as **Exhibit B**.

4.  On March 17, 2025, L&W filed an Answer to Plaintiff's Complaint in the San Bernardino Superior Court. *See* Declaration of Alexander Chemers ("Chemers Decl."), ¶ 3; Ex. D (Answer to Complaint). A copy of the Answer is attached as **Exhibit D**.

5.  As further required by 28 U.S.C. § 1446(a), L&W hereby provides this Court with copies of all process, pleadings, and orders received by L&W in this action. True and correct copies of the rest of the documents are attached as **Exhibit C** to this Notice of Removal. *See* Indgjer Decl., ¶ 5. L&W has not been served with any pleadings, process, or orders besides those attached. *Id*. Defendant ABC has not been served with the summons and Complaint. *See* Indgjer Decl., ¶ 13.

6.  Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. *See* 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

**II.   REMOVAL IS TIMELY**

7.  This Notice of Removal is timely as it is filed less than one year from the date this action was commenced and within 30 days of service upon L&W. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

### III. REMOVAL IS PROPER UNDER CAFA

8. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which (1) any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

9. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class is a citizen of a State different from at least one defendant, the number of individuals in the proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

#### A. CAFA's Diversity of Citizenship Requirement is Satisfied

10. *Citizenship of Plaintiff and putative class members*. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

11. The Complaint alleges that "Plaintiff Kaliph Chenevert is a resident of Palm Desert, in Riverside County, California." Ex. A, ¶ 4. The Complaint further alleges that "Plaintiff worked for Defendants as a Branch Helper/Stocker and Driver Assistant at their Palm Springs, California location." *Id.*

12. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. Ex. A, ¶ 52; *see, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of Delaware, Illinois, and/or Wisconsin (and there is

no evidence that he is), there is no possible way that the citizenship of hundreds of putative class members, all of whom worked in California (Ex. A, ¶ 52), were also citizens of Delaware, Illinois, or Wisconsin.

13. <u>Citizenship of Defendant</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

14. At all relevant times, L&W has been a citizen of Delaware, Illinois, and Wisconsin. First, L&W has been a company organized under the laws of Delaware. *See* Indgjer Decl., ¶ 6. Second, L&W's principal place of business is in Chicago, Illinois and Beloit, Wisconsin. *See* Indgjer Decl., ¶¶ 6-7. L&W's principal place of business is in Illinois because its headquarters are located there, and that is where L&W executive management directs, controls, and coordinates its activities. *Id*. A substantial portion of L&W's executive management is also located in Beloit, Wisconsin. *Id.* L&W has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. *See* Indgjer Decl., ¶ 8. Accordingly, L&W is a citizen of Delaware, Illinois, and Wisconsin, and not a citizen of California.

15. At all relevant times, ABC has been a citizen of Delaware and Wisconsin. First, ABC has been a company organized under the laws of Delaware. *See* Indgjer Decl., ¶ 10. Second, ABC's principal place of business is in Beloit,

DEFENDANT'S NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT

Wisconsin. *See* Indgjer Decl., ¶¶ 10-11. ABC's principal place of business is in Wisconsin because its headquarters are located there, and that is where ABC executive management directs, controls, and coordinates its activities. *Id*. ABC has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. *See* Indgjer Decl., ¶ 12. Accordingly, ABC is a citizen of Delaware and Wisconsin, and not a citizen of California.

16. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998).

17. Minimal diversity is established because Plaintiff is a citizen of California and Defendants are citizens of Delaware, Illinois, and/or Wisconsin. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

**B.     CAFA's Class Size Requirement Is Satisfied**

18. Plaintiff brings the Action pursuant to California Code of Civil Procedure § 382 on behalf of numerous subclasses (collectively defined as the "Class"), including persons that fall within this category:

> All persons who worked for Defendants as non-exempt, hourly paid employees in California within four years prior to the filing of the initial complaint until the date of trial ("Class").

Ex. A, ¶ 52.

19. L&W's employment records show that there are hundreds of current and former employees who fall within Plaintiff's proposed class. As of the date of removal, during the proposed class period (January 13, 2021 through March 16, 2025), L&W employed, in the aggregate, at least 897 employees in the putative class. *See* Declaration of Casie Lachance ("Lachance Decl."), ¶ 6. Thus, CAFA's size requirement is satisfied.

### C. CAFA's Requisite $5 Million Amount In Controversy Is Satisfied

20. Plaintiff has not alleged a specified amount in controversy in the Complaint. *See generally* Ex. A.

21. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

22. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

23. In alleging the amount in controversy for purposes of CAFA removal, L&W does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does L&W concede that any or all putative class members are entitled to any

recovery in this case, or are appropriately included in the Action. While L&W (as well as ABC) denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

24.  As described further below, as well as in the concurrently filed declaration from Casie Lachance,[2] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### 1. L&W's Estimate of the Amount in Controversy

25.  In determining the amount in controversy to support its Notice of Removal, L&W relies on a conservative estimate based only on damages sought by Plaintiff in his Complaint as a result of the alleged: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Unpaid Overtime; and (4) Wages Not Timely Paid Upon Termination. Because the amounts in controversy for these four claims alone satisfy the jurisdictional minimum requirement of $5 million, L&W do not include additional estimates of the amounts placed in controversy by

---

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) Unpaid Minimum Wages; (2) Non-Compliant Wage Statements and Failure to Maintain Payroll Records; (3) Failure to Timely Pay Wages During Employment; (4) Failure to Provide Reporting Time Pay; and (5) Unreimbursed Business Expenses. *See generally* Ex. A; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes). That said, L&W reserves the right to do so in opposition to any remand motion.

### (a) The amount placed in controversy by the failure to provide meal periods claim.

26. In his First Cause of Action, Plaintiff alleges that Defendants failed to provide putative class members with meal periods. Ex. A, ¶¶ 62 and 63. Plaintiff alleges regular and systemic failures to provide rest periods:

- "[D]uring the relevant period, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their jobsites while assigning heavy workloads, including pressure to keep up with time-sensitive deliveries, which has resulted in a lack of meal period coverage and prevented Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled." Ex. A, ¶ 62.
- "As a result, Plaintiff and class members had to work through all or part of their meal periods, had their meal periods interrupted, and/or had to wait extended periods of time before taking meal periods." Ex. A, ¶ 63.

27. Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. Labor Code § 226.7(c). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Chavez v. Pratt (Robert Mann Packaging),*

*LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

28. When determining the amount placed in controversy by a plaintiff's allegations regarding a common "policy" or "practice" of meal period violations like those alleged by Plaintiff in the Complaint, an estimate of a 20% meal period violation rate—*i.e.*, one violation for each workweek—is both reasonable and conservative. *See Chavez*, 2019 WL 1501576, at *3 ("Courts in this Circuit, including in this [Northern] District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods; collecting cases); *Hender v. Am. Directions Workforce LLC,* 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (finding a 20% violation rate reasonable when a plaintiff "claims a 'policy and practice' of denying employees meal and rest breaks"); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *3 (N.D. Cal. June 28, 2021) (same.); *Danielsson v. Blood Centers of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (same); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (approving one missed meal period per week as "reasonable" in light of policy or practice allegations.).

29. Based on a review of L&W's business records, during the Class Period, the putative class members worked an aggregate of **at least 83,607** workweeks and received an average hourly rate of at **$24.35**. *See* Lachance Decl., ¶¶ 7-8. The lowest minimum wage during the relevant covered period was **$14.00**.

30. Based on a conservative analysis using a 20% violation rate (*i.e.*, one meal violation per week), L&W's calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for failure to provide legally compliant meal periods is **at least $1,170,504.00**. The computation of the amount in controversy is based on conservative calculations that during the Class Period,

putative class members worked **at least 83,607** workweeks, that there was a 20% meal period violation rate equating to one violation week, and each putative class member earned an average hourly rate of $14.00.³  *See* Lachance Decl., ¶¶ 7-8.

31. Consequently, the amount placed in controversy based on Plaintiff's allegations in support of the Meal Period Claim is at least **$1,170,504.00** ($14.00 x 83,607 workweeks).

### (b) The amount placed in controversy by the failure to provide rest breaks claim.

32. In his Second Cause of Action, Plaintiff alleges that Defendants failed to provide putative class members with rest breaks. Ex. A, ¶¶ 75 and 76. Plaintiff alleges regular and systemic failures to provide rest periods:

- "During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof." Ex. A, ¶ 75.
- "Defendants' company-wide practices, including understaffing and assigning heavy workloads, prevented Plaintiff and class members from being relieved of all duty to take rest periods." Ex. A, ¶ 75.
- "Furthermore, upon information and belief, Defendants maintained and implemented a company-wide on-premises rest period policy, which effectively required that Plaintiff and class members remain on the premises during their rest periods." Ex. A, ¶ 76.

33. Under California law, employers must provide at least one 10-minute

---

³ Relying on the average hourly rate of pay is well-accepted for calculating the amount placed into controversy for meal and rest period claims. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *2 (C.D. Cal. Apr. 9, 2019) (meal and rest); "[T]he average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation; *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation").

rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

34.     Courts accept a 100% rest period violation rate when there are allegations of widespread failures to provide rest periods, as there are here. *See, e.g., Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (accepting a 100% rest period violation rate where plaintiff "alleges that 'at all material times,' Defendant failed to provide putative class members with uninterrupted meal and rest periods"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (approving 100% rest period violation rate where Plaintiff alleges that Defendant maintained uniform policies, practices, and procedures that caused violation of California's rest period laws"); *Dawson v. Hitco Carbon Composites, Inc.*, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (approving 100% rest period violation rate based on allegation that "[a]t all material times," Defendant failed to provide the requisite uninterrupted meal periods and rest periods"); *Feltzs v. Cox Commc'ns Cal., LLC*, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate).

35.     Nonetheless, and even though the Complaint contends that "Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period," L&W conservatively assumes a 20% rest period violation rate, *i.e.*, for every week of work (5 shifts) there was only 1 shift with a violation.

36.     Based on a review of L&W's business records, during the Class Period, the putative class members worked an aggregate of **at least 83,607** workweeks. *See*

LaChance Decl., ¶¶ 7-8. The lowest minimum wage during the relevant covered period was **$14.00**.

37. Based on a conservative analysis using a 20% violation rate—*i.e.*, one rest violation for every week, Defendants' calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for failure to provide legally compliant rest periods is at least **$1,170,504.00**. The computation of the amount in controversy is based on conservative calculations that during the Class Period, putative class members worked **83,607** workweeks, that there was a 20% rest period violation rate equating to one violation each week, and each putative class member earned an average hourly rate of at least $14.00. *See* LaChance Decl., ¶¶ 7-8.

38. Consequently, the amount placed in controversy based on Plaintiff's allegations in support of his Rest Period Claim is at least **$1,170,504.00** ($14.00 x 83,607 workweeks).

### (c) The amount placed in controversy by the overtime wage claim.

39. In his Third Cause of Action, Plaintiff alleges that Defendants failed to pay putative class members for all overtime worked. Ex. A, ¶¶ 86, 87. Plaintiff further alleges the following with respect to his overtime wage claims:

- "During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members." Ex. A, ¶ 86.
- "Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and class members were performing their assigned duties off-the-clock during their meal periods, and were suffered or permitted to perform work for which they were not paid." Ex. A, ¶ 87.

40. California Labor Code § 510 provides, *inter alia*, that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at

one and one-half times an employee's regular rate of pay. Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

41. Based on a review of L&W's business records, putative class members worked **at least 83,607** workweeks during the Class Period. *See* LaChance Decl., ¶ 8. Putative class members' average hourly rate of pay[4] during those 83,607 workweeks was **$24.35**. *Id*. The lowest minimum wage during the relevant covered period was **$14.00**.

42. L&W's calculation of the amount placed in controversy by Plaintiff's claims for unpaid overtime is at least **$1,755,756.00** (83,607 workweeks x (1.5 x $14.00) x 1 hour). This calculation is based on the estimate that putative class members worked 1 hour of unpaid overtime per week.

43. L&W's estimate is conservative and reasonable. *See, e.g., Vasquez v. RSI Home Products, Inc*., 2020 WL 6778772, at *6–*7 (C.D. Cal. Nov. 12, 2020) (assumption of 30 minutes of overtime per week was reasonable based upon evidence that class members worked on average 8.61 hours per day*); Torrez v. Freedom Mortgage, Corp*., 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours per week was reasonable); *Francisco v. Emeritus Corp.,* 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Feao v. UFP Riverside, LLC,* 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving

---

[4] When calculating the amount in controversy for an overtime wages claim, courts routinely accept the use of average rates of pay. *See, e.g., Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"); *Taylor v. United Rd. Servs., Inc*., 313 F. Supp. 3d 1161, 1179 (E.D. Cal. 2018) (same).

of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

44. Consequently, the amount placed in controversy by the Unpaid Overtime Wages Claim, based on Plaintiff's allegations, is at least **$1,755,756.00** (83,607 workweeks x (1.5 x $14.00) x 1 hour).

### (d) The amount placed in controversy by the failure to timely pay wages upon termination claim.

45. In his Sixth Cause of Action, Plaintiff alleges that Defendants failed to timely pay wages upon termination. Ex. A, ¶¶ 109, 110. Plaintiff further alleges the following with respect to his overtime wage claims:

- "During the relevant time period, Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, … either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." Ex. A, ¶ 109.

- "Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203." Ex. A, ¶ 110.

46. Pertinent here, under Labor Code section 203, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398

(2010).

47. Here, because Plaintiff alleges that L&W "willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, … either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ" (Ex. A ¶ 109), it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate. *See Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendant's waiting time penalties calculation was "supported by Plaintiff's allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "regularly required" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of plaintiff's allegation that members of the putative class "routinely" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty"); *Mackall v. Healthsource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *4-6 (N.D. Cal. Sept. 2, 2016) (holding that a 100% violation rate appropriate, given allegations that the defendant "consistently maintained and enforced unlawful policies" and failed to pay overtime that was "regularly worked"); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (approving a 100% violation rate for waiting time penalty calculations based on "at all relevant times" language); *Mendoza v. National Vision, Inc.*, No. 19-cv-01485-SVK, 2019 WL 2929745, at *4-6 (N.D. Cal. Jul. 8, 2019) (holding that it was reasonable to assume a 100% violation rate for waiting time penalties due to

allegations that the defendant "regularly and consistently" failed to pay overtime wages as part of its "uniform policies and practices"); *Chavez v. Pratt (Robert Mann Packaging), LLC*, Case No. No. 19-cv-00719-N, 2019 WL 1501576 at *3 (N.D. Cal. Apr. 5, 2019) (finding that claims of a "pattern and practice" of failing to pay class members all final wages supports a 100% violation rate).

48. Here, at least 419 putative class members separated from employment in the 3-year liability period. *See* LaChance Decl., ¶ 10. Because the full amount of waiting time penalties does not accrue until 30 days after the last day of employment, L&W limited this calculation to persons whose employment with L&W ended from January 13, 2022 through February 15, 2025, *i.e.*, at least 30 days prior to the date of this Removal. The 419 persons whose employment ended during that period had an average final pay rate of at least $22.20. *See* LaChance Decl., ¶ 10. L&W has also conservatively applied only a six-hour estimate for each shift, even though L&W's employees are scheduled to work six or more hours each day. *See* LaChance Decl., ¶ 9.

49. Consequently, the amount placed in controversy by the Failure to Pay Wages at Termination Claim is at least **$1,674,515.46** ((($22.20 x 6 hours) x 30 days) x 419 terminated putative class members).

### (e) Summary of Defendant's calculations.

50. As described above, a conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, overtime wage, meal period, and rest period exceed the jurisdictional minimum of $5,000,000. These 4 claims have placed at least $5,771,279.46 in controversy, summarized as follows:

| Claim | Estimated Exposure |
|---|---|
| Meal Period | $1,170,504.00 |
| Rest Period | $1,170,504.00 |
| Overtime Wages | $1,755,756.00 |

| Claim | Estimated Exposure |
|---|---|
| Waiting Time Penalties | $1,674,515.46 |
| **Total** | **$5,771,279.46** |

51. Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV. DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

52. <u>Venue is Proper</u>. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of San Bernardino is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

53. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon L&W are attached as Exhibits to this Notice.

54. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of San Bernardino. Notice of compliance shall be filed promptly afterward with this Court.

55. As required by Federal Rule of Civil Procedure rule 7.1, L&W has concurrently filed its Certificate of Interested Parties and Disclosure Statement.

/ / /

/ / /

/ / /

56. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, L&W requests that the Court issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal.

WHEREFORE, L&W removes this action to this Court.

DATED: March 17, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Alexander M. Chemers
    Alexander M. Chemers

Attorneys for Defendant
L&W SUPPLY CORPORATION