# EXHIBIT A

Roxanna Tabatabaeepour (SBN 260187)
Roxanna.Taba@capstonelawyers.com
Ryan Tish (SBN 274284)
Ryan.Tish@capstonelawyers.com
Alexander Wallin (SBN 320420)
Alexander.Wallin@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Kaliph Chenevert

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT
1/30/25 12:07 PM
By: Mariah Mora, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| KALIPH CHENEVERT, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"), <br><br> Plaintiff, <br><br> vs. <br><br> L & W SUPPLY CORPORATION, a Delaware corporation; AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.:    CIVSB2501423 <br><br> **CLASS ACTION COMPLAINT & ENFORCEMENT ACTION UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698, _ET SEQ._** <br><br> (1)  Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods); <br> (2)  Violation of California Labor Code §§ 226.7, 516, and 1198 (Failure to Authorize and Permit Rest Periods); <br> (3)  Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); <br> (4)  Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages); <br> (5)  Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); <br> (6)  Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination); <br> (7)  Violation of California Labor Code § 204 (Failure to Timely Pay Wages During Employment); <br> (8)  Violation of Labor Code § 1198 and California Code of Regulations, Title 8, Section 11070 Subdivision 5(A) (Failure to Provide Reporting Time Pay; |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(9)   Violation of California Labor Code
      § 2802 (Unreimbursed Business
      Expenses);
(10)  Claim for Civil Penalties for Violations
      of California Labor Code, Pursuant to
      PAGA, §§ 2698, *et seq.*;
(11)  Violation of California Business &
      Professions Code §§ 17200, *et seq.*
      (Unlawful Business Practices); and
(12)  Violation of California Business &
      Professions Code §§ 17200, *et seq.*
      (Unfair Business Practices)

**Jury Trial Demanded**

CLASS ACTION COMPLAINT

**EXHIBIT A  PAGE 22**

1    Plaintiff Kaliph Chenevert, individually, and on behalf of all other members of the

2    public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved

3    employees, alleges as follows:

4    **JURISDICTION AND VENUE**

5    1.    This class action is brought pursuant to California Code of Civil Procedure

6    section 382 and California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil

7    penalties and any other available relief on behalf of Plaintiff, the State of California, and other

8    current and former employees who worked for Defendants in California as non-exempt,

9    hourly paid employees and received at least one wage statement and against whom one or

10   more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any

11   provision regulating hours and days of work in the applicable Industrial Welfare Commission

12   ("IWC") Wage Order were committed, as set forth in this complaint.  The monetary damages,

13   penalties, and restitution sought by Plaintiff exceed the minimal jurisdiction limits of the

14   Superior Court and will be established according to proof at trial.  This Court has jurisdiction

15   over this action pursuant to the California Constitution, Article VI, section 10.  The statutes

16   under which this action is brought do not specify any other basis for jurisdiction.  Plaintiff's

17   share of civil penalties sought in this action does not exceed $75,000.

18   2.    This Court has jurisdiction over all Defendants because, on information and

19   belief, Defendants are either citizens of California, have sufficient minimum contacts in

20   California, or otherwise intentionally avail themselves of the California market so as to render

21   the exercise of jurisdiction over them by the California courts consistent with traditional

22   notions of fair play and substantial justice.

23   3.    Venue is proper in this Court, because Defendants employ persons within the

24   County of San Bernardino, and have violated the requirements of the California Labor Code

25   and applicable Wage Order in this county which give rise to the penalties sought in this

26   action.  Cal. Code Civ. P. § 393.  Specifically, Defendants have violated the requirements of

27   the California Labor Code and applicable IWC Wage Order in at least one location within the

28   County of San Bernardino, including Defendants' facility in Redlands (616 Iowa Street

EXHIBIT A  PAGE 23

1   Redlands, California 92373). Pursuant to California Civil Code of Procedure section 393,

2   venue is proper for the recovery of a penalty or forfeiture imposed by statute in the county in

3   which the cause, or some part of the cause, arose. Because Defendants have employees in San

4   Bernardino County and Plaintiff could bring this action to recover penalties in San Bernardino

5   County, venue is proper.

6                               **THE PARTIES**

7       4.      Plaintiff Kaliph Chenevert is a resident of Palm Desert, in Riverside County,

8   California. Defendants employed Plaintiff as an hourly paid, non-exempt employee from

9   approximately March 2023 to February 2024. Plaintiff worked for Defendants as a Branch

10  Helper/Stocker and Driver Assistant at their Palm Springs, California location. Plaintiff

11  typically worked eight (8) or more hours per day, and five (5) or more days per week. At the

12  time Plaintiff's employment with Defendants ended, he was compensated approximately

13  $20.00 per hour. Plaintiff's job duties included, without limitation, assisting drivers with

14  loading, spotting, and equipment maintenance; stocking and inventory tasks; and organizing and

15  staging materials at jobsites.

16      5.      L & W SUPPLY CORPORATION was and is, upon information and belief, a

17  Delaware corporation, and at all times hereinafter mentioned, an employer whose employees

18  are engaged throughout this county and the State of California.

19      6.      AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. was and is,

20  upon information and belief, a Delaware corporation, and at all times hereinafter mentioned,

21  an employer whose employees are engaged throughout this county and the State of California.

22      7.      Plaintiff is unaware of the true names or capacities of the Defendants sued

23  herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to

24  amend the complaint and serve such fictitiously named Defendants once their names and

25  capacities become known.

26      8.      Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10

27  were the partners, agents, owners, or managers of L & W SUPPLY CORPORATION and

28  AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. at all relevant times.

**EXHIBIT A  PAGE 24**

1        9.    Plaintiff is informed and believes, and thereon alleges, that each and all of the

2   acts and omissions alleged herein was performed by, or is attributable to, L & W SUPPLY

3   CORPORATION; AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC.; and/or

4   DOES 1 through 10 (collectively, "Defendants" or "L&W"), each acting as the agent,

5   employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-

6   Defendants and was acting within the course and scope of such agency, employment, joint

7   venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any

8   and all Defendants were in accordance with, and represent, the official policy of Defendants.

9        10.    At all relevant times, Defendants, and each of them, ratified each and every act

10   or omission complained of herein.  At all relevant times, Defendants, and each of them, aided

11   and abetted the acts and omissions of each and all the other Defendants in proximately causing

12   the damages herein alleged.

13        11.    Plaintiff is informed and believes, and thereon alleges, that each of said

14   Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts,

15   omissions, occurrences, and transactions alleged herein.

16        12.    Under California law, Defendants are jointly and severally liable as employers

17   for the violations alleged herein because they have each exercised sufficient control over the

18   wages, hours, working conditions, and employment status of Plaintiff and class members.

19   Each Defendant had the power to hire and fire Plaintiff and class members, supervised and

20   controlled their work schedule and/or conditions of employment, determined their rate of pay,

21   and maintained their employment records.  Defendants suffered or permitted Plaintiff and

22   class members to work and/or "engaged" Plaintiff and class members so as to create a

23   common-law employment relationship.  As joint employers of Plaintiff and class members,

24   Defendants are jointly and severally liable for the civil penalties available to Plaintiff and

25   class members under the law.

26        13.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times,

27   Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class

28   members because Defendants have:

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 25

(a)    jointly exercised meaningful control over the work performed by Plaintiff and class members;

(b)    jointly exercised meaningful control over Plaintiff's and class members' wages, hours, and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff and class members;

(c)    jointly required that Plaintiff and class members perform work which is an integral part of Defendants' businesses; and

(d)    jointly exercised control over Plaintiff and class members as a matter of economic reality in that Plaintiff and class members were dependent on Defendants, who shared the power to set the wages of Plaintiff and class members and determined their working conditions, and who jointly reaped the benefits from the underpayment of their wages and noncompliance with other statutory provisions governing their employment.

14.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times there has existed a unity of interest and ownership between Defendants such that any individuality and separateness between the entities has ceased.

15.    L & W SUPPLY CORPORATION; AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC.; and/or DOES 1 through 10 are therefore alter egos of each other.

16.    Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them under the name L&W.

17.    Plaintiff further alleges, upon information and belief, that the Defendants L & W SUPPLY CORPORATION and AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. are alter egos of each other for the following reasons:

(a)    According to the California Secretary of State's website

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 26

1    (https://bizfileonline.sos.ca.gov/), L & W SUPPLY CORPORATION

2    and AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC.

3    share the same agent for service of process, CSC – LAWYERS

4    INCORPORATING SERVICE;

5        (b)    According to their most recent "Statement of Information" forms filed

6    with the California Secretary of State, L & W SUPPLY

7    CORPORATION and AMERICAN BUILDERS & CONTRACTORS

8    SUPPLY CO., INC. share the same officers, including, but not limited

9    to, Jim Anderson, who serves as the Chief Financial Officer; Keith [F]

10    Rozolis, who serves a Chief Executive Officer; and Karl Leo, who

11    serves as Secretary for L & W SUPPLY CORPORATION and

12    AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC.;

13    and

14        (c)    On information and belief, L & W SUPPLY CORPORATION and

15    AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC.

16    utilize the same standardized employment forms and issue the same

17    employment policies.

18    **GENERAL ALLEGATIONS**

19        18.    Defendants are one of the nation's largest distributors of wallboard, insulation,

20    steel framing, acoustical ceilings and other interior building materials for the needs of

21    commercial and residential contractors.  Upon information and belief, Defendants maintain a

22    single, centralized Human Resources (HR) department at their corporate headquarters in

23    Chicago, Illinois, or, Beloit, Wisconsin, for all non-exempt, hourly paid employees working

24    for Defendants in California, which is responsible for the recruiting and hiring of new

25    employees, and communicating and implementing Defendants' company-wide policies,

26    including timekeeping policies and meal and rest period policies, to employees throughout

27    California.

28        19.    In particular, Plaintiff and class members, on information and belief, received

the same standardized documents and/or written policies. Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions. Upon information and belief, Defendants set forth uniform policies and procedures in several documents provided at an employee's time of hire.

20. Upon information and belief, Defendants maintain a centralized Payroll department at their corporate headquarters in Chicago, Illinois, or, Beloit, Wisconsin, which processes payroll for all non-exempt, hourly paid employees working for Defendants at their various locations in California, including Plaintiff and class members. Based upon information and belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid employees in California, irrespective of their work locations. Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

21. Defendants continue to employ non-exempt or hourly paid employees in California.

22. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

23. Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

24. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members

were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

25. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period and that Plaintiff and class members were not authorized and permitted to take compliant rest periods or provided with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

26. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

27. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock. In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

28. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law. In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

29. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly,

Page 7

EXHIBIT A  PAGE 29

1  and intentionally failed to do so.

2       30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

3  should have known that Plaintiff and class members were entitled to timely payment of all

4  wages earned upon termination of employment.  In violation of the California Labor Code,

5  Plaintiff and class members did not receive payment of all wages due, including, but not

6  limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting

7  time pay, within permissible time periods.

8       31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

9  should have known that Plaintiff and class members were entitled to timely payment of wages

10  during their employment.  In violation of the California Labor Code, Plaintiff and class

11  members did not receive payment of all wages, including, but not limited to, overtime wages,

12  minimum wages, meal and rest period premiums, and/or reporting time pay, within

13  permissible time periods.

14       32.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

15  should have known that they were prohibited from issuing instruments for the payment of

16  wages that were not payable in cash on demand, without discount and with authorization, but

17  did so, in violation of the California Labor Code.

18       33.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

19  should have known that Plaintiff and class members were entitled to the portion of wages

20  previously paid and subsequently unlawfully deducted by Defendants.

21       34.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

22  should have known that Plaintiff and class members were entitled to payment of wages as

23  designated by statute.  In violation of the California Labor Code, Defendants secretly paid

24  Plaintiff and class members lower wages than required by statute while purporting to pay

25  them proper wages.

26       35.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

27  should have known that Plaintiff and class members were entitled to be paid reporting time

28  pay when they reported to work for their usual or scheduled shift but were put to work for less

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 30

1    than half of the usual or scheduled shift. In violation of the California Labor Code,

2    Defendants did not pay Plaintiff and class members reporting time pay due.

3          36.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

4    should have known that Plaintiff and class members were entitled to receive reimbursement

5    for all business-related expenses and costs they incurred during the course and scope of their

6    employment and that they did not receive reimbursement of applicable business-related

7    expenses and costs incurred.

8          37.     Plaintiff is informed and believes, and thereon alleges, that at all times herein

9    mentioned, Defendants knew or should have known that they had a duty to compensate

10    Plaintiff and class members for all hours worked, and that Defendants had the financial ability

11    to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and

12    falsely represented to Plaintiff and class members that they were properly denied wages, all in

13    order to increase Defendants' profits.

14                         **PAGA REPRESENTATIVE ALLEGATIONS**

15          38.     At all times herein set forth, PAGA provides that any provision of law under

16    the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be

17    assessed and collected by the LWDA for violations of the California Labor Code and

18    applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a

19    civil action brought on behalf of themselves and other current or former employees pursuant

20    to procedures outlined in California Labor Code section 2699.3.

21          39.     PAGA defines an "aggrieved employee" in Labor Code section 2699(c)(1) as

22    "any person who was employed by the alleged violator and personally suffered each of the

23    violations alleged each of the violations alleged."

24          40.     Plaintiff and other current and former employees of Defendants are "aggrieved

25    employees" as defined by Labor Code section 2699(c)(1) in that they are all Defendants'

26    current or former employees and each of the alleged violations were committed against them.

27          41.     Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved

28    employee, including Plaintiff, may pursue a civil action arising under PAGA after the

following requirements have been met:

        (a)    The aggrieved employee shall give written notice by online filing (hereinafter "Employee's Notice") to the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

        (b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

        (c)    The LWDA shall provide notice (hereinafter "LWDA Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violation within sixty (60) calendar days of the postmark date of the Employee's Notice.  Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within sixty-five (65) calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

    42.    Pursuant to California Labor Code section 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

        (a)    The aggrieved employee or representative shall give written notice by online filing to the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

        (b)    An aggrieved employee's notice filed with the LWDA pursuant to

2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)    The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice. The employer shall give written notice by certified mail within that period of time to the aggrieved employee or representative and the agency if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence. If the alleged violation is not cured within the 33-day period, the employee may commence a civil action pursuant to Section 2699.

43.    On November 6, 2024, Plaintiff provided written notice by online filing to the LWDA and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3. Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75). The LWDA PAGA Administrator has confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-1060440-24. A true and correct copy of Plaintiff's written notice to the LWDA and Defendants dated November 6, 2024, is attached hereto as "Exhibit 1."

44.    As of the filing date of this complaint, over 65 days have passed since Plaintiff sent the written notice described above, and the LWDA has not responded that it intends to investigate Plaintiff's claims, and Defendants have not cured the violations.

45.    Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code sections 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

46.    Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any

CLASS ACTION COMPLAINT

1   provision regulating hours and days of work in any order of the Industrial Welfare

2   Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty

3   dollars ($50) for each underpaid employee for each pay period for which the employee was

4   underpaid . . . . (2) For each subsequent violation, one hundred dollars ($100) for each

5   underpaid employee for each pay period for which the employee was underpaid . . . ." Labor

6   Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition

7   to any other civil or criminal penalty provided by law."

8       47.     Defendants, at all times relevant to this complaint, were employers or persons

9   acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees'

10  rights by violating various sections of the California Labor Code as set forth above.

11      48.     As set forth below, Defendants have violated numerous provisions of both the

12  Labor Code sections regulating hours and days of work as well as the applicable IWC Wage

13  Order.

14      49.     Pursuant to PAGA, and in particular, California Labor Code sections 1994.5,

15  2699(a), 2699.3(a), 2699.3(c), 2699.5, and section 558, Plaintiff, acting in the public interest

16  as a private attorney general, seeks assessment and collection of civil penalties and injunctive

17  relief for himself, all other aggrieved employees, and the State of California against

18  Defendants for violations of California Labor Code sections 201, 202, 204, 212, 213, 221,

19  223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and

20  2802.

21                          **CLASS ACTION ALLEGATIONS**

22      50.     Plaintiff brings this action on his own behalf, as well as on behalf of each and

23  all other persons similarly situated, and thus seeks class certification under California Code of

24  Civil Procedure section 382.

25      51.     All claims alleged herein arise under California law for which Plaintiff seeks

26  relief authorized by California law.

27      52.     Plaintiff's proposed class consists of and is defined as follows:

28          All persons who worked for Defendants as non-exempt, hourly

EXHIBIT A  PAGE 34

1   paid employees in California, within four years prior to the filing of the initial complaint until the date of trial ("Class").

2   53.   Plaintiff's proposed subclass consists of and is defined as follows:

3   All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass").

4

5

6   54.   Members of the Class and Subclass are referred to herein as "class members."

7   55.   Plaintiff reserves the right to redefine the Class and Subclass and to add

8   additional subclasses as appropriate based on further investigation, discovery, and specific

9   theories of liability.

10   56.   There are common questions of law and fact as to class members that

11   predominate over questions affecting only individual members, including, but not limited to:

12       (a)   Whether Defendants failed to provide Plaintiff and class members with

13             meal periods;

14       (b)   Whether Defendants failed to authorize and permit Plaintiff and class

15             members to take rest periods;

16       (c)   Whether Defendants required Plaintiff and class members to work over

17             eight (8) hours per day, over twelve (12) hours per day, or over forty

18             (40) hours per week and failed to pay all legally required overtime

19             compensation to Plaintiff and class members;

20       (d)   Whether Defendants failed to pay Plaintiff and class members at least

21             minimum wages for all hours worked;

22       (e)   Whether Defendants provided Plaintiff and class members with

23             complete and accurate wage statements as required by California Labor

24             Code section 226(a);

25       (f)   Whether Defendants maintained accurate payroll records as required by

26             California Labor Code section 1174(d);

27       (g)   Whether Defendants failed to pay earned overtime wages, minimum

28             wages, meal and rest period premiums, and/or reporting time pay due to

Page 13

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 35

Plaintiff and class members upon their discharge;

(h)    Whether Defendants failed to timely pay overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay due to Plaintiff and class members during their employment;

(i)    Whether Defendants issued instruments for the payment of wages that were not payable in cash, on demand, without discount, and with prior authorization, in violation of California Labor Code sections 212 and 213;

(j)    Whether Defendants unlawfully deducted a portion of wages previously paid to Plaintiff and class members, in violation of California Labor Code sections 221 and 224;

(k)    Whether Defendants secretly paid Plaintiff and class members lower wages than required by statute while purporting to pay the proper wages, in violation of California Labor Code section 223;

(l)    Defendants required Plaintiff and class members to report to work, but failed to provide them with work or provided them with less than half their usual or scheduled day's work, without properly compensating them as required by California Code of Regulations, Title 8, section 11070(5);

(m)    Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(n)    Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(o)    The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

57.    There is a well-defined community of interest in the litigation and the class

EXHIBIT A  PAGE 36

members are readily ascertainable:

    (a)   <u>Numerosity</u>: The class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

    (b)   <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all class members as demonstrated herein.

    (c)   <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

    (d)   <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

(e)    Public Policy Considerations:  Employers in the State of California

violate employment and labor laws every day.  Current employees are

often afraid to assert their rights out of fear of direct or indirect

retaliation.  Former employees are fearful of bringing actions because

they believe their former employers might damage their future

endeavors through negative references and/or other means.  Class

actions provide the class members who are not named in the complaint

with a type of anonymity that allows for the vindication of their rights

while simultaneously protecting their privacy.

## FIRST CAUSE OF ACTION

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198—Meal Period**

**Violations**

**(Against all Defendants)**

58.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

and every allegation set forth above.

59.    At all relevant times herein set forth, California Labor Code section 512(a)

provides that an employer may not require, cause, or permit an employee to work for a period

of more than five (5) hours per day without providing the employee with a meal period of not

less than thirty (30) minutes, except that if the total work period per day of the employee is

not more than six (6) hours, the meal period may be waived by mutual consent of both the

employer and the employee.  Under California law, first meal periods must start after no more

than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012).

60.    At all relevant times herein set forth, California Labor Code sections 226.7,

512(a), 516, and 1198 provide that no employer shall require an employee to work during any

meal period mandated by an applicable order of the IWC.

61.    At all relevant times herein set forth, Labor Code sections 226.7, 512(a), 1198,

and the applicable IWC Wage Order also require employers to provide a second meal period

of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay

an employee one (1) additional hour of pay at the employee's regular rate, except that if the
total hours worked is no more than twelve (12) hours, the second meal period may be waived
by mutual consent of the employer and the employee only if the first meal period was not
waived.

62.    First, during the relevant period, Defendants had, and continue to have, a
company-wide policy and/or practice of understaffing their jobsites while assigning heavy
workloads, including pressure to keep up with time-sensitive deliveries, which has resulted in
a lack of meal period coverage and prevented Plaintiff and class members from taking all
timely, uninterrupted meal periods to which they were entitled.  Further, Defendants had a
company-wide practice and/or policy of failing to schedule meal periods, which further caused
Plaintiff and class members to not be relieved of their duties for compliant meal periods.

63.    As a result, Plaintiff and class members had to work through all or part of their
meal periods, had their meal periods interrupted, and/or had to wait extended periods of time
before taking meal periods.  For example, Plaintiff was sometimes required to work straight
through his meal periods in order to keep up with the demands of the workload and complete
time-sensitive deliveries to multiple construction sites in a day.  As another example,
Plaintiff's supervisors sometimes required him to return early from his meal periods to keep
up with Defendants' workload.  Additionally, Plaintiff sometimes took his meal periods late,
after the fifth hour of work, due to the lack of coverage and Defendants' failure to schedule
meal periods.

64.    Second, on information and belief, because Defendants frowned upon
employees accruing meal period premiums, Defendants' management pressured Plaintiff and
class members to clock out for meal periods, even when they did not receive a compliant meal
period.  For example, Plaintiff was required to clock out for his meal periods to record that he
had received compliant meal periods on shifts when he had not, in fact, received these timely,
uninterrupted meal periods.

65.    Third, Defendants did not provide Plaintiff and class members with second 30-
minute meal periods on days that they worked in excess of 10 hours in one day.  During his

Page 17

CLASS ACTION COMPLAINT

1   employment, Plaintiff worked shifts in excess of ten (10) or more hours per day but was never

2   provided a second 30-minute meal period.  Plaintiff and class members did not sign valid meal

3   period waivers on days that they were entitled to meal periods and were not relieved of all

4   duties.

5          66.     Moreover, Defendants had a company-wide policy of requiring all newly hired

6   employees to sign blanket meal period waivers at or near their time of hire.  Defendants took

7   the position that non-exempt, hourly paid employees had waived their rights to first and/or

8   second meal periods for the entirety of their employment and, on that basis, did not provide

9   them with all meal periods to which they were entitled.  Further, Defendants' "Voluntary

10  Waiver of First meal Periods" and "Voluntary Waiver of Second Meal Periods" forms require

11  employees to provide written notice should they wish to revoke the waivers.  Defendants'

12  presumption that meal periods would not be provided for shifts in excess of five (5) hours but

13  less than six (6) hours and/or for shifts in excess of ten (10) hours but less than twelve (12)

14  hours, due to blanket meal period waivers signed at or near the time of hire, and imposition on

15  employees to revoke waivers by providing written notice, discouraged and impeded Plaintiff

16  and class members from taking all meal periods to which they were entitled.

17         67.     Furthermore, an employer's obligation to provide a meal period is only

18  "triggered" when the employer "employs an employee for a work period of more than five

19  hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits

20  anyone to work for a full five hours, its meal break obligation is triggered.").

21         [A]fter the meal break obligation is triggered . . . an employer is put to a
22         choice: it must (1) afford an off-duty meal period; (2) consent to a
           mutually agreed-upon waiver if one hour or less will end the shift; or (3)
23         obtain written agreement to an on-duty meal period if circumstances
           permit. Failure to do one of these will render the employer liable for
24         premium pay.

25  *Id.* (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)).  That Defendants

26  required Plaintiff and class members to sign meal period waivers simultaneously at or near the

27  time of hire (as opposed to on a specific work day) renders them invalid and unenforceable,

28  because Defendants' obligation to provide Plaintiff and class members with meal periods did

Page 18

CLASS ACTION COMPLAINT

1   not arise until Defendants had employed them for a full five (5) hours.

2       68.    At all times herein mentioned, Defendants knew or should have known that, as

3   a result of these policies, Plaintiff and class members were prevented from being relieved of

4   all duties to take timely, uninterrupted meal periods.  Defendants further knew or should have

5   known that they did not pay Plaintiff and class members meal period premiums when meal

6   periods were late, interrupted, shortened, and/or missed.

7       69.    Moreover, Defendants engaged in a company-wide practice and/or policy of not

8   paying all meal period premiums owed when compliant meal periods are not provided.  Because

9   of this practice and/or policy, Plaintiff and class members have not received premium pay for all

10  missed, late, and interrupted meal periods.

11      70.    Defendants' conduct violates the applicable IWC Wage Order, and California

12  Labor Code sections 226.7, 512(a), 516, and 1198.  Plaintiff and class members are therefore

13  entitled to recover from Defendants one (1) additional hour of pay at the employee's regular

14  rate of compensation for each work day that the meal period was not provided.

15  <div align="center">**SECOND CAUSE OF ACTION**</div>

16  <div align="center">**Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations**</div>

17  <div align="center">**(Against all Defendants)**</div>

18      71.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

19  and every allegation set forth above.

20      72.    At all relevant times, the applicable IWC Wage Order provides that "[e]very

21  employer shall authorize and permit all employees to take rest periods, which insofar as

22  practicable shall be in the middle of each work period" and that the "rest period time shall be

23  based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4)

24  hours or major fraction thereof" unless the total daily work time is less than three and one-half

25  (3 ½) hours.

26      73.    At all relevant times, California Labor Code section 226.7 provides that no

27  employer shall require an employee to work during any rest period mandated by an applicable

28  order of the California IWC.  To comply with its obligation to authorize and permit rest

<div align="center">Page 19</div>
<div align="center">CLASS ACTION COMPLAINT</div>

1   periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an

2   employer must "relinquish any control over how employees spend their break time, and

3   relieve their employees of all duties—including the obligation that an employee remain on

4   call. A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services,*

5   *Inc.*, 2 Cal. 5th 257, 273 (2016).

6        74.    Pursuant to the applicable IWC Wage Order and California Labor Code section

7   226.7(c), Plaintiff and class members are entitled to recover from Defendants one (1)

8   additional hour of pay at their regular rates of pay for each work day that a required rest

9   period was not authorized and permitted.

10        75.    During the relevant time period, Defendants regularly failed to authorize and

11   permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour

12   period worked or major fraction thereof. As with meal periods, Defendants' company-wide

13   practices, including understaffing and assigning heavy workloads, prevented Plaintiff and

14   class members from being relieved of all duty to take rest periods. Additionally, Defendants

15   failed to schedule rest periods, which, coupled with Defendants' failure to provide adequate

16   rest period coverage, further led to Plaintiff and class members not being authorized and

17   permitted to take rest periods.

18        76.    Furthermore, upon information and belief, Defendants maintained and

19   implemented a company-wide on-premises rest period policy, which effectively required that

20   Plaintiff and class members remain on the premises during their rest periods. Because Plaintiff

21   and class members were restricted from leaving Defendants' premises during rest periods, they

22   were denied the ability to use their rest periods freely for their own purposes, such as

23   completing personal errands. Thus, Defendants effectively maintained control over Plaintiff and

24   class members during rest periods.

25        77.    As a result of Defendants' practices and policies, Plaintiff and class members

26   worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without

27   receiving all uninterrupted 10-minute rest periods to which they were entitled. For example,

28   throughout his employment, Plaintiff had to forgo some of his rest periods, because of the

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 42

1  pressure to keep up with time-sensitive deliveries, lack of rest period coverage, and

2  Defendants' failure to schedule rest periods for employees.  When Plaintiff was able to take

3  rest periods, they would often be interrupted by supervisors requiring him to return to work to

4  complete inventory counts, unload materials, or attend to customers.

5       78.  Defendants have also engaged in a company-wide practice and/or policy of not

6  paying all rest period premiums owed when compliant rest periods are not authorized and

7  permitted.  Because of this practice and/or policy, Plaintiff and class members have not

8  received premium pay for all missed rest periods.

9       79.  Defendants' conduct violates the applicable IWC Wage Order and California

10  Labor Code sections 226.7, 516, and 1198.  Plaintiff and class members are therefore entitled

11  to recover from Defendants one (1) additional hour of pay at the employee's regular rate of

12  compensation for each work day that a compliant rest period was not authorized and

13  permitted.

14  **THIRD CAUSE OF ACTION**

15  **Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

16  **(Against all Defendants)**

17       80.  Plaintiff incorporates by reference and re-alleges as if fully stated herein each

18  and every allegation set forth above.

19       81.  Labor Code section 1198 makes it illegal to employ an employee under

20  conditions of labor that are prohibited by the applicable IWC Wage Order.  California Labor

21  Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission

22  shall be the . . . standard conditions of labor for employees.  The employment of any employee

23  . . . under conditions of labor prohibited by the order is unlawful."

24       82.  California Labor Code section 1198 and the applicable IWC Wage Order

25  provide that it is unlawful to employ persons without compensating them at a rate of pay

26  either time-and-one-half or two-times that person's regular rate of pay, depending on the

27  number of hours worked by the person on a daily or weekly basis.

28       83.  Specifically, the applicable IWC Wage Order provides that Defendants are and

1  were required to pay Plaintiff and class members working more than eight (8) hours in a day

2  or more than forty (40) hours in a workweek, at the rate of time and one-half (1 ½) for all

3  hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a

4  workweek.

5          84.     The applicable IWC Wage Order further provides that Defendants are and were

6  required to pay Plaintiff and class members working more than twelve (12) hours in a day,

7  overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's

8  regular rate of pay includes all remuneration for employment paid to, or on behalf of, the

9  employee, including nondiscretionary bonuses and incentive pay.

10         85.     California Labor Code section 510 codifies the right to overtime compensation

11 at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8)

12 hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the

13 seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate

14 of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours

15 in a day on the seventh (7th) day of work.

16         86.     During the relevant time period, Defendants willfully failed to pay all overtime

17 wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and

18 class members were not paid overtime premiums for all of the hours they worked in excess of

19 eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40)

20 hours in a week, because all hours worked were not recorded.

21         87.     First, as stated, Defendants had, and continue to have, company-wide policies

22 and/or practices of understaffing their facilities and jobsites while assigning heavy workloads,

23 including pressure to keep up with time-sensitive deliveries.  Defendants' policies and/or

24 practices resulted in a failure to provide Plaintiff and class members with adequate meal

25 period coverage, and thus, Plaintiff and class members were not always afforded uninterrupted

26 30-minute meal periods during shifts when they were entitled to receive a meal period.  As

27 also stated, Defendants had a practice of failing to schedule meal periods which, in

28 conjunction with the assignment of heavy workloads, further caused Plaintiff and class

CLASS ACTION COMPLAINT

members to not be relieved of their duties for compliant meal periods. For example, as stated, Plaintiff worked through all or part of his meal periods due to lack of coverage and heavy workload. Defendants did not compensate Plaintiff and class members for the time they spent working off the clock during unpaid meal periods.

88.     Second, as stated, on information and belief, because Defendants frowned upon employees accruing meal period premiums, Defendants' management pressured employees to clock out for meal periods, regardless of whether they had received a compliant meal period or not. Thus, Defendants did not record all hours worked during meal periods, and Plaintiff and class members performed work during meal periods for which they were not paid.

89.     Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and class members were performing their assigned duties off-the-clock during their meal periods, and were suffered or permitted to perform work for which they were not paid. Because Plaintiff and/or class members worked shifts of eight (8) hours a day or more, or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they actually worked.

90.     Defendants' failure to pay Plaintiff and class members the balance of overtime compensation as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover from Defendants their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid Minimum Wages

### (Against all Defendants)

91.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

92.     At all relevant times, California Labor Code sections 1182.12, 1194, 1197, and

CLASS ACTION COMPLAINT

**EXHIBIT A   PAGE 45**

1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage
to be paid to employees, and the payment of a wage less than the minimum so fixed is
unlawful. Compensable work time is defined in IWC Wage Order No. 7-2001 as "the time
during which an employee is suffered or permitted to work for the employer, whether or not
required to do so." Cal. Code Regs. tit. 8, § 11070(2)(H) (defining "Hours Worked").

93.    As stated above, due to Defendants' policies and/or practices of understaffing
their facilities and jobsites while assigning heavy workloads, which included pressuring
employees to meet time-sensitive repair deadlines, and failing to schedule meal periods,
Plaintiff and class members were prevented from taking all uninterrupted meal periods to
which they were entitled and were required to work off-the-clock during meal periods, have
their meal periods interrupted, and/or were otherwise not relieved of all duties during unpaid
meal periods.

94.    Also, as stated above, on information and belief, because Defendants frowned
upon employees accruing meal period premiums, Defendants' managers pressured employees
to clock out for meal periods to reflect compliant meal periods, even when they did not
receive a compliant meal period. Thus, Defendants systematically failed to pay Plaintiff and
class members for actual hours worked during unpaid meal periods because these hours were
not always correctly recorded.

95.    Defendants did not pay at least minimum wages for all hours worked by
Plaintiff and class members. To the extent that these off-the-clock hours did not qualify for
overtime premium payment, Defendants did not pay at least minimum wages for those hours
worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and
1198.

96.    Defendants' failure to pay Plaintiff and class members minimum wages violates
California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Pursuant to
California Labor Code section 1194.2, Plaintiff and class members are entitled to recover from
Defendants liquidated damages in an amount equal to the wages unlawfully unpaid and
interest thereon.

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage

### Statements and Failure to Maintain Accurate Payroll Records

### (Against all Defendants)

97.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

98.     At all relevant times herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

99.     During the relevant time period, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements.  For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; the address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9).

100.    Because Defendants did not record the time Plaintiff and Subclass members spent working off-the-clock and deducted time from their records for meal periods that were missed and/or interrupted (and therefore time for which they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiff and Subclass members, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

101.    Further, and separate from these violations, Defendants issued uniform wage statements to Plaintiff and Subclass members that failed to correctly list the address of the legal entity of the actual employer in violation of 226(a)(8).  The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment or in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc.  Plaintiff's and Subclass members' wage statements incorrectly list the employer's address as "One ABC Parkway Beloit, WI 53511" but, according to the California Secretary of State's website, the correct address is "300 RIVERSIDE PLAZA STE 200 CHICAGO, IL 60606".

102.    The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name of legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

103.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments . . . ."  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass

EXHIBIT A  PAGE 48

1    members showing the daily hours they worked and the wages paid thereto as a result of failing

2    to record the off-the-clock hours that they worked.

3        104.    California Labor Code section 1198 provides that the maximum hours of work

4    and the standard conditions of labor shall be those fixed by the Labor Commissioner and as

5    set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he

6    employment of any employees for longer hours than those fixed by the order or under

7    conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC

8    Wage Order, employers are required to keep accurate time records showing when the

9    employee begins and ends each work period and meal period.  During the relevant time

10    period, Defendants engaged in company-wide practices and/or policies of failing to record

11    actual hours worked, and thereby failed to keep accurate records of work period and meal

12    period start and end times for Plaintiff and Subclass members, in violation of section 1198.

13    Also, in light of Defendants' failure to provide Plaintiff and Subclass members with second

14    30-minute meal periods to which they were entitled, Defendants kept no records of meal start

15    and end times for second meal periods.

16        105.    Plaintiff and Subclass members are entitled to recover from Defendants the

17    greater of their actual damages caused by Defendants' failure to comply with California Labor

18    Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per

19    employee.

20                        **SIXTH CAUSE OF ACTION**

21    **Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon**

22                                **Termination**

23                            **(Against all Defendants)**

24        106.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

25    and every allegation set forth above.

26        107.    This cause of action is dependent upon, and wholly derivative of, the overtime

27    wages, minimum wages, meal and rest period premiums, and/or reporting time pay that were

28    not timely paid to Plaintiff those class members no longer employed by Defendants upon their

1  termination.

2      108.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide

3  that if an employer discharges an employee, the wages earned and unpaid at the time of

4  discharge are due and payable immediately, and that if an employee voluntarily leaves his or

5  her employment, his or her wages shall become due and payable not later than seventy-two

6  (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of

7  his or her intention to quit, in which case the employee is entitled to his or her wages at the

8  time of quitting.

9      109.    During the relevant time period, Defendants willfully failed to pay Plaintiff and

10  class members who are no longer employed by Defendants the earned and unpaid wages set

11  forth above, including but not limited to, overtime wages, minimum wages, meal and rest

12  period premiums, and/or reporting time pay, either at the time of discharge, or within seventy-

13  two (72) hours of their leaving Defendants' employ.

14      110.    Defendants' failure to pay Plaintiff and class members who are no longer

15  employed by Defendants their wages earned and unpaid at the time of discharge, or within

16  seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201

17  and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the

18  statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a

19  thirty (30) day maximum pursuant to California Labor Code section 203.

20                          **SEVENTH CAUSE OF ACTION**

21      **Violation of California Labor Code § 204—Failure to Timely Pay Wages During**

22                                  **Employment**

23                          **(Against all Defendants)**

24      111.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

25  and every allegation set forth above.

26      112.    This cause of action is dependent upon, and wholly derivative of, the overtime

27  wages, minimum wages, meal and rest period premiums, and/or reporting time pay that were

28  not timely paid to Plaintiff and class members during their employment.

113.    At all relevant times herein set forth, California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed.  Labor Code section 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

114.    At all relevant times herein, California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all relevant times herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

115.    During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, within the time periods specified by California Labor Code section 204.

116.    Defendants' failure to pay Plaintiff and class members all wages due violates Labor Code section 204.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

## EIGHTH CAUSE OF ACTION

### Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 5(A)—Failure to Provide Reporting Time Pay

### (Against all Defendants)

117.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

118.    California Labor Code section 1198 makes it illegal to employ an employee

Page 29

EXHIBIT A  PAGE 51

1  under conditions of labor that are prohibited by the applicable IWC Wage Order.  California

2  Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the

3  commission shall be the . . . standard conditions of labor for employees.  The employment of

4  any employee . . . under conditions of labor prohibited by the order is unlawful."

5      119.    California Code of Regulations, Title 8, section 11070(5)(A) provides that

6  "[e]ach workday an employee is required to report for work and does report, but is not put to

7  work or is furnished less than half said employee's usual or scheduled day's work, the

8  employee shall be paid for half the usual or scheduled day's work, but in no event for less

9  than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which

10  shall not be less than the minimum wage."  The "primary purpose of the reporting time

11  regulation" is "to guarantee at least partial compensation for employees who report to work

12  expecting to work a specified number of hours, and who are deprived of that amount because

13  of inadequate scheduling or lack of proper notice by the employer."  *Aleman v. AirTouch*

14  *Cellular*, 209 Cal. App. 4th 556 (2012).

15      120.    During the relevant time period, Defendants violated California Labor Code

16  section 1198 and California Code of Regulations, Title 8, section 11070(5)(A), because

17  Defendants failed to pay Plaintiff and class members reporting time pay when they reported to

18  work for their scheduled shift but were put to work for less than half of the usual or scheduled

19  day's work.

20      121.    Defendants had a company-wide practice of sending Plaintiff and class

21  members home early from their shifts, including before they had worked at least half of their

22  usual or scheduled shift, but would not pay Plaintiff and class members for half of their usual

23  or scheduled shift.  For example, when scheduled to work a shift of eight (8) hours,

24  Defendants' managers sent Plaintiff home one (1) hour after the start of his shift.  Although

25  Plaintiff and class members would report to work based on the schedule that Defendants

26  provided to them, Defendants would send them home before they worked at least half of their

27  usual or scheduled shifts.  When this occurred, Defendants did not pay Plaintiff and class

28  members for at least half of their scheduled day's work or the minimum reporting time pay.

1    122.    Accordingly, Plaintiff and class members were not properly compensated with

2    reporting time pay in violation of California Labor Code section 1198 and California Code of

3    Regulations, Title 8, section 11070(5)(A).  Plaintiff and class members are therefore entitled

4    to recover from Defendants unpaid wages and interest.

5    <center>**NINTH CAUSE OF ACTION**</center>

6    <center>**Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**</center>

7    <center>**(Against all Defendants)**</center>

8    123.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

9    and every allegation set forth above.

10    124.    At all times herein set forth, California Labor Code section 2802 provides that

11    an employer must reimburse employees for all necessary expenditures and losses incurred by

12    the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is

13    to prevent employers from passing off their cost of doing business and operating expenses on

14    to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144

15    (2014).  The applicable wage order, IWC Wage Order No. 7-2001 provides that: "[w]hen tools

16    or equipment are required by the employer or are necessary to the performance of a job, such

17    tools and equipment shall be provided and maintained by the employer, except that an

18    employee whose wages are at least two (2) times the minimum wage provided herein may be

19    required to provide and maintain hand tools and equipment customarily required by the trade

20    or craft."  IWC Wage Order No. 7-2001 further provides that: "[w]hen uniforms are required

21    by the employer to be worn by the employee as a condition of employment, such uniforms

22    shall be provided and maintained by the employer."

23    125.    During the relevant time period, Plaintiff and class members were required to

24    use their personal mobile devices, including, but not limited to, cellular phones, and/or mobile

25    data to carry out their job duties, but Defendants failed to reimburse them for the costs of their

26    work-related mobile device expenses.  For example, Plaintiff was required to use his personal

27    cellular phone to communicate with his supervisors to discuss the progress of assignments and

28    to take and send pictures of work completed, and for calculating measurements.  Although

<center>Page 31</center>

1  Defendants required Plaintiff and class members to utilize their personal mobile devices
2  and/or mobile data to carry out their work-related responsibilities, Defendants failed to
3  reimburse them for these costs.

4      126.    Also, during the relevant time period, Defendants required Plaintiff and class
5  members to wear uniforms bearing the Defendants company logo, including high visibility
6  shirts and pants. Due to the nature of construction work, Plaintiff's uniforms would become
7  sweaty, soiled, and/or stained by dirt and drywall materials, such that they were unable to mix
8  these clothes in with other laundry. As a result, he had to wash his uniform items separately
9  from his regular clothing, thus incurring additional laundry expenses for the upkeep of his
10  uniforms. Thus, Defendants failed to maintain uniforms they required Plaintiff and class
11  members to wear during their shifts and forced them to incur the cost of maintaining employee
12  uniforms.

13      127.    Defendants could have provided Plaintiff and class members with the actual
14  equipment for use on the job, such as company mobile devices as well as access to laundering
15  services. Or, Defendants could have reimbursed employees for the costs of their mobile
16  device usage and laundering expenses or provided a uniform maintenance allowance. Instead,
17  Defendants passed these operating costs onto Plaintiff and class members. At all relevant
18  times, Plaintiff did not earn at least two (2) times the minimum wage.

19      128.    Defendants' company-wide policy and/or practice of not reimbursing
20  employees for expenses necessarily incurred and passing on their operating costs to Plaintiff
21  and class members violates California Labor Code section 2802. Defendants have
22  intentionally and willfully failed to reimburse Plaintiff and class members for necessary
23  business-related expenses and costs.

24      129.    Plaintiff and class members are entitled to recover from Defendants their
25  business-related expenses incurred during the course and scope of their employment, plus
26  interest.

27  //
28  //

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 54

## TENTH CAUSE OF ACTION

### For Civil Penalties, Pursuant to California Labor Code §§ 2698, *et seq.*

### (Against all Defendants)

130.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

131.    California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5. Section 2699.5 enumerates Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 1174(d), and 1198. Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 226(a), 226.7, 510, 512(a), 516, 1182.12, 1194, 1197, and 2802.

132.    Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

        (a)    Violation of Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to provide Plaintiff and other aggrieved employees with meal periods, as alleged herein;

        (b)    Violation of Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order for Defendants' failure to authorize and permit Plaintiff and other aggrieved employees to take rest periods, as alleged herein;

        (c)    Violation of Labor Code sections 510 and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime pay, as alleged herein;

        (d)    Violation of Labor Code sections 1182.12, 1194, 1197, and 1198, and the applicable IWC Wage Order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

Page 33

**EXHIBIT A PAGE 55**

1           (e)    Violation of Labor Code sections 226(a) and 1198, and the applicable

2                  IWC Wage Order for failure to provide accurate and complete wage

3                  statements to Plaintiff and other aggrieved employees, as alleged herein;

4           (f)    Violation of Labor Code sections 1174(d) and 1198, and the applicable

5                  IWC Wage Order for failure to maintain payroll records, as alleged

6                  herein;

7           (g)    Violation of Labor Code sections 201 and 202 for failure to pay all

8                  earned wages upon termination, as alleged herein;

9           (h)    Violation of Labor Code section 204 for failure to pay all earned wages

10                 during employment, as alleged herein;

11          (i)    Violation of Labor Code sections 212 and 213 for issuing instruments

12                 for the payment of wages that were not payable in cash on demand,

13                 without discount, and with prior authorization, as set forth below;

14         (j)    Violation of Labor Code sections 221 and 224 for unlawfully deducting

15                 a portion of wages previously paid to Plaintiff and other aggrieved

16                 employees, as set forth below;

17         (k)    Violation of Labor Code section 223 for secretly paying Plaintiff and

18                 other aggrieved employees lower wages than required by statute, while

19                 purporting to pay the proper wages, as set forth below;

20         (l)    Violation of Labor Code section 1198 and the applicable IWC Wage

21                 Order for failure to pay reporting time pay when Plaintiff and other

22                 aggrieved employees were put to work for less than half of their regular

23                 scheduled shifts, as alleged herein; and

24         (m)    Violation of Labor Code section 2802 for failure to reimburse Plaintiff

25                 and other aggrieved employees for all business expenses necessarily

26                 incurred, as alleged herein.

27      133.    At all relevant times herein, California Labor Code section 212 prohibits

28 employers from issuing any instruments for the payment of wages unless such instruments are

1    negotiable and payable in cash on demand and without discount. California Labor Code

2    section 213 permits employers to pay employees via direct deposit so long as the employee

3    authorizes payment via direct deposit. Under California law, employers are also permitted to

4    fulfill their wage payment obligations to employees by using payroll debit cards, but only

5    under certain circumstances. Employer use of payroll debit cards is permitted only so long as

6    the employee is given the choice as to whether to accept a payroll debit card as a form of

7    payment. Johnson v. Sunrise Senior Living Management, Inc., No. 16 CV 00443 BRO

8    RAOx, 2016 WL 8929249, *9 (C.D. Cal. May 5, 2016). In Johnson, the court stated that the

9    Division of Labor Standards Enforcement ("DLSE") decision deeming payroll debit card

10   program permissible relied heavily on:

11           . . . [T]he fact that the pay programs were optional, thereby allowing an
             employee to either participate in the program or receive his or her pay in
12           some other way, such as direct deposit. Specifically, the DLSE opined
             that "[t]he success of the described procedure, in practice, will of course
13           require that . . . it is presented as an *alternative* method for wage payment
             for which [the employees'] participation is optional." The DLSE also
14           stated, "'[i]t is significant that the program does not mandate employee
             participation in the Money Network Service and that it is designed to
15           provide an alternative for employees receiving their wage payment.
             Employees are also given the option of having their pay direct deposited
16           into an account of their choosing. . . ." (internal citations omitted).

17           134.    In addition, employers can only utilize payroll debit card programs if they

18   provide employees with effective access to their wages without discount. The DLSE has

19   interpreted Labor Code sections 212 and 213 as permitting employer use of payroll debit cards

20   where the following requirements are satisfied:

21           . . . (1) [T]he "wages [are] payable at some established place of business
             in the state and there be at least 30 days of sufficient funds for payment,";
22           (2) the employees are "fully informed of the service and procedures and
             that it is represented as an alternative method for wage payment for which
23           their participation is optional,"; (3) the employees receive "an itemized
             wage statement,"; and (4) "at least one transaction per pay period [is]
24           without fee."

25   *Ortiz v. Randstad North America, L.P.*, No. C-13-5050 MMC, 2015 WL 6202298
     at 3.
26

27           135.    Further, the DLSE notes that the Labor Code manifests:

28           . . . [A] strong public policy that prohibits an employer (or its agent) from

CLASS ACTION COMPLAINT

1    imposing conditions or obstacles which interfere with or prevent an
     employee's (sic) from promptly receiving their due wages in *full*. The
2    imposition of a fee in order to readily *access* one's earned and paid wages
     under a payroll card program which is designed to discharge the
3    employer's wage payment obligations could impermissibly interfere with
     an employee's receipt of paid wages by creating a financial condition
4    which would have the *effect* of reducing or discounting wages because
     such fee would be charged against the same account in which wages are
5    deposited. (emphases in original)

6    *DLSE opinion letter* 2008.07.07. The DLSE has also acknowledged that payroll service

7    providers "effectively act as agents of the client employers in discharging the employer's

8    wage payment obligations." *Id.* In a second opinion letter, the DLSE stated that "[w]hile the

9    Labor Code does not purport to regulate the specific arrangements between employers and

10   payroll service providers, both an employer and, under the express language in Labor Code

11   § 212- their agent, must comply with its requirements." *DLSE opinion letter* 2008.07.07-2.

12        136.    During the relevant time period, Defendants had an agreement with a payroll

13   service provider, Wisely, for the issuance of payroll debit cards to employees, including

14   Plaintiff and other aggrieved employees, to discharge their wage payment obligations to their

15   employees. On information and belief, Defendants had a practice of and/or policy of

16   automatically issuing payroll debit cards to departing employees without giving them the

17   option to elect their form of payment for their final wages. For example, Plaintiff received his

18   final wages on a payroll debit card without a choice of an alternate method of payment, such

19   as a written check. Instead, Defendants automatically enrolled Plaintiff in their payroll debit

20   card program for the purpose of issuing Plaintiff's final wages to him without prior, voluntary

21   approval from Plaintiff.

22        137.    Moreover, under Defendants' payroll debit card program, Plaintiff and other

23   aggrieved employees did not have easy access to the entirety of their wages without incurring

24   a fee. Plaintiff and other aggrieved employees were unable to withdraw their entire wages in

25   at least one transaction without incurring a fee, which resulted in a discount in their pay. For

26   example, Plaintiff was subjected to transaction fees when withdrawing his wages from an out-

27   of-network ATM. Thus, Defendants' payroll debit card program was, and continues to be,

28   unlawful as it did not give Plaintiff and other aggrieved employees access to their entire

1    wages without discount and without delay.

2          138.    California courts recognize a policy favoring the full and prompt payment of

3    wages to employees.  Defendants' payroll card program is inconsistent with this policy

4    because Defendants' program is involuntary and presents a number of obstacles and hurdles

5    that, together, make it difficult for Plaintiff and other aggrieved employees to access their

6    entire wages without discount and without delay, in violation of California Labor Code

7    sections 212 and 213.  Plaintiff and other aggrieved employees are therefore entitled to

8    recover civil penalties pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (k).

9          139.    At all times relevant herein, California Labor Code section 221 provides that it

10    shall be unlawful for any employer to collect or receive from an employee any part of wages

11    theretofore paid by said employer to said employee.  California Labor Code section 224 also

12    provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a

13    deduction is expressly authorized in writing by the employee."

14          140.    During the relevant time period, upon information and belief, Defendants

15    unlawfully deducted a portion of wages previously paid to Plaintiff and other aggrieved

16    employees in violation of California Labor Code section 221.  On information and belief,

17    Defendants systematically, and on a company-wide basis, provided Plaintiff and other

18    aggrieved employees with payroll debit cards as payment of their wages and/or final wages.

19    Under Defendants' payroll debit card program, Plaintiff and other aggrieved employees were

20    assessed various fees in connection with their use of the payroll debit cards.  For example, as

21    described above, Plaintiff and other aggrieved employees were required to pay out-of-network

22    ATM withdrawal fees and/or other fees to obtain and/or spend their earned and due wages.

23    The fees charged to Plaintiff and other aggrieved employees resulted in a discount of their

24    wages.

25          141.    Defendants' practice which resulted in a discount of wages to employees, is

26    tantamount to taking deductions from Plaintiff's and other aggrieved employees' paychecks

27    without their written authorization and therefore constitutes an unlawful deduction of wages,

28    in violation of Labor Code sections 221 and 224.  Plaintiff and other aggrieved employees are

EXHIBIT A  PAGE 59

1    therefore entitled to recover civil penalties pursuant to Labor Code sections 225.5 and/or

2    2699(a), (f), and (k).

3        142.    At all times, California Labor Code section 223 makes it unlawful for an

4    employer to secretly pay wages lower than required by statute while purporting to pay legal

5    wages.

6        143.    During the relevant time period, Defendants willfully and systematically issued

7    payroll debit cards to Plaintiff and other aggrieved employees that discounted their wages by

8    charging various fees in connection with the use of the payroll debit cards. Defendants'

9    payroll debit card program resulted in the payment of less than statutorily required wages to

10    Plaintiff and other aggrieved employees. Thus, Defendants paid Plaintiff and other aggrieved

11    employees lower wages than those they were entitled to while purporting that Plaintiff and

12    other aggrieved employees were properly paid.

13        144.    Defendants' failure to pay Plaintiff and other aggrieved employees the correct

14    designated wage, while purporting to pay legal wages, is a violation of California Labor Code

15    section 223. Plaintiff and other aggrieved employees are therefore entitled to recover civil

16    penalties pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (k).

17                          **ELEVENTH CAUSE OF ACTION**

18      **Violation of California Business & Professions Code §§ 17200, *et seq.* –**

19                   **Unlawful Business Practices**

20                      **(Against all Defendants)**

21        145.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

22    and every allegation set forth above.

23        146.    Defendants are "persons" as defined by California Business & Professions

24    Code section 17201, as they are corporations, firms, partnerships, joint stock companies,

25    and/or associations.

26        147.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

27    unlawful and harmful to Plaintiff, class members, and to the general public. Plaintiff has

28    suffered injury in fact and has lost money as a result of Defendants' unlawful business

1    practices. Plaintiff seeks to enforce important rights affecting the public interest within the

2    meaning of Code of Civil Procedure section 1021.5.

3        148.    Defendants' activities, as alleged herein, are violations of California law, and

4    constitute unlawful business acts and practices in violation of California Business &

5    Professions Code sections 17200, *et seq*.

6        149.    A violation of California Business & Professions Code sections 17200, *et seq*.

7    may be predicated on the violation of any state or federal law. In the instant case, Defendants'

8    policies and practices have violated state law in at least the following respects:

9            (a)    Failing to pay at least minimum wage to Plaintiff and class members in

10                  violation of California Labor Code sections 1182.12, 1194, 1197,

11                  1197.1, and 1198, and the applicable IWC Wage Order, as alleged

12                  herein;

13           (b)    Failing to provide all meal periods to Plaintiff and class members in

14                  violation of California Labor Code sections 226.7, 512(a), 516, and

15                  1198, and the applicable IWC Wage Order, as alleged herein;

16           (c)    Requiring non-exempt, hourly paid employees, including Plaintiff and

17                  class members, to work overtime without paying them proper

18                  compensation in violation of California Labor Code sections 510 and

19                  1198, and the applicable IWC Wage Order, as alleged herein;

20           (d)    Failing to authorize and permit Plaintiff and class members to take all

21                  rest periods in violation of California Labor Code sections 226.7, 516,

22                  and 1198, and the applicable IWC Wage Order, as alleged herein;

23           (e)    Failing to provide Plaintiff and class members with accurate wage

24                  statements and failing to maintain accurate payroll records in violation

25                  of California Labor Code sections 226(a), 1174(d), and 1198, and the

26                  applicable IWC Wage Order, as alleged herein;

27           (f)    Failing timely to pay all earned wages to Plaintiff and class members in

28                  violation of California Labor Code section 204, as alleged herein; and

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 61

(g)     Failing to pay reporting time pay in violation of California Labor Code section 1198 and the applicable IWC Wage Order, as alleged herein;

(h)     Issuing instruments to Plaintiff and class members for the payment of wages that were not payable in cash, on demand, without discount, and with prior authorization, in violation of California Labor Code sections 212 and 213, as set forth below;

(i)     Collecting or receiving wages already paid from Plaintiff and/or class members in violation of California Labor Code sections 221 and 224, as set forth below;

(j)     Failing to pay the statutorily designated wage scale in violation of California Labor Code section 223, as set forth below; and

(k)     Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code section 2802, as alleged herein.

150.    At all relevant times herein, California Labor Code section 212 prohibits employers from issuing any instruments for the payment of wages unless such instruments are negotiable and payable in cash on demand and without discount. California Labor Code section 213 permits employers to pay employees via direct deposit so long as the employee authorizes payment via direct deposit. Under California law, employers are also permitted to fulfill their wage payment obligations to employees by using payroll debit cards, but only under certain circumstances. Employer use of payroll debit cards is permitted only so long as the employee is given the choice as to whether to accept a payroll debit card as a form of payment. *Johnson v. Sunrise Senior Living Management, Inc.*, No. 16 CV 00443 BRO RAOx, 2016 WL 8929249, *9 (C.D. Cal. May 5, 2016). In Johnson, the court stated that the Division of Labor Standards Enforcement ("DLSE") decision deeming payroll debit card program permissible relied heavily on:

> . . . [T]he fact that the pay programs were optional, thereby allowing an employee to either participate in the program or receive his or her pay in some other way, such as direct deposit. Specifically, the DLSE opined

Page 40

that "[t]he success of the described procedure, in practice, will of course require that . . . it is presented as an *alternative* method for wage payment for which [the employees'] participation is optional." The DLSE also stated, "'[i]t is significant that the program does not mandate employee participation in the Money Network Service and that it is designed to provide an alternative for employees receiving their wage payment. Employees are also given the option of having their pay direct deposited into an account of their choosing. . . ." (internal citations omitted).

151.    In addition, employers can only utilize payroll debit card programs if they provide employees with effective access to their wages without discount.  The DLSE has interpreted Labor Code sections 212 and 213 as permitting employer use of payroll debit cards where the following requirements are satisfied:

> . . . (1) [T]he "wages [are] payable at some established place of business in the state and there be at least 30 days of sufficient funds for payment,"; (2) the employees are "fully informed of the service and procedures and that it is represented as an alternative method for wage payment for which their participation is optional,"; (3) the employees receive "an itemized wage statement,"; and (4) "at least one transaction per pay period [is] without fee."

*Ortiz v. Randstad North America, L.P.*, No. C-13-5050 MMC, 2015 WL 6202298 at 3.

152.    Further, the DLSE notes that the Labor Code manifests:

> . . . [A] strong public policy that prohibits an employer (or its agent) from imposing conditions or obstacles which interfere with or prevent an employee's (sic) from promptly receiving their due wages in *full*.  The imposition of a fee in order to readily *access* one's earned and paid wages under a payroll card program which is designed to discharge the employer's wage payment obligations could impermissibly interfere with an employee's receipt of paid wages by creating a financial condition which would have the *effect* of reducing or discounting wages because such fee would be charged against the same account in which wages are deposited. (emphases in original)

*DLSE opinion letter* 2008.07.07.  The DLSE has also acknowledged that payroll service providers "effectively act as agents of the client employers in discharging the employer's wage payment obligations."  *Id.*  In a second opinion letter, the DLSE stated that "[w]hile the Labor Code does not purport to regulate the specific arrangements between employers and payroll service providers, both an employer and, under the express language in Labor Code § 212- their agent, must comply with its requirements."  *DLSE opinion letter* 2008.07.07-2.

153.    During the relevant time period, Defendants had an agreement with a payroll

EXHIBIT A  PAGE 63

1    service provider, Wisely, for the issuance of payroll debit cards to employees, including

2    Plaintiff and class members, to discharge their wage payment obligations to their employees.

3    On information and belief, Defendants had a practice of and/or policy of automatically issuing

4    payroll debit cards to departing employees without giving them the option to elect their form

5    of payment for their final wages. For example, Plaintiff received his final wages on a payroll

6    debit card without a choice of an alternate method of payment, such as a written check.

7    Instead, Defendants automatically enrolled Plaintiff in their payroll debit card program for the

8    purpose of issuing Plaintiff's final wages to him without prior, voluntary approval from

9    Plaintiff.

10        154.    Moreover, under Defendants' payroll debit card program, Plaintiff and class

11    members did not have easy access to the entirety of their wages without incurring a fee.

12    Plaintiff and class members were unable to withdraw their entire wages in at least one

13    transaction without incurring a fee, which resulted in a discount in their pay. For example,

14    Plaintiff was subjected to transaction fees when withdrawing his wages from an out-of-

15    network ATM. Thus, Defendants' payroll debit card program was, and continues to be,

16    unlawful as it did not give Plaintiff and class members access to their entire wages without

17    discount and without delay.

18        155.    California courts recognize a policy favoring the full and prompt payment of

19    wages to employees. Defendants' payroll card program is inconsistent with this policy

20    because Defendants' program is involuntary and presents a number of obstacles and hurdles

21    that, together, make it difficult for Plaintiff and class members to access their entire wages

22    without discount and without delay, in violation of California Labor Code sections 212 and

23    213.

24        156.    At all times relevant herein, California Labor Code section 221 provides that it

25    shall be unlawful for any employer to collect or receive from an employee any part of wages

26    theretofore paid by said employer to said employee. California Labor Code section 224 also

27    provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a

28    deduction is expressly authorized in writing by the employee."

157. During the relevant time period, upon information and belief, Defendants unlawfully deducted a portion of wages previously paid to Plaintiff and class members in violation of California Labor Code section 221. On information and belief, Defendants systematically, and on a company-wide basis, provided Plaintiff and class members with payroll debit cards as payment of their wages and/or final wages. Under Defendants' payroll debit card program, Plaintiff and class members were assessed various fees in connection with their use of the payroll debit cards. For example, as described above, Plaintiff and class members were required to pay out-of-network ATM withdrawal fees and/or other fees to obtain and/or spend their earned and due wages. The fees charged to Plaintiff and class members resulted in a discount of their wages.

158. Defendants' practice which resulted in a discount of wages to employees, is tantamount to taking deductions from Plaintiff's and class members' paychecks without their written authorization and therefore constitutes an unlawful deduction of wages, in violation of Labor Code sections 221 and 224.

159. At all times, California Labor Code section 223 makes it unlawful for an employer to secretly pay wages lower than required by statute while purporting to pay legal wages.

160. During the relevant time period, Defendants willfully and systematically issued payroll debit cards to Plaintiff and class members that discounted their wages by charging various fees in connection with the use of the payroll debit cards. Defendants' payroll debit card program resulted in the payment of less than statutorily required wages to Plaintiff and class members. Thus, Defendants paid Plaintiff and class members lower wages than those they were entitled to while purporting that Plaintiff and class members were properly paid.

161. Defendants' failure to pay Plaintiff and class members the correct designated wage, while purporting to pay legal wages, is a violation of California Labor Code section 223.

162. As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses. Plaintiff and class members

CLASS ACTION COMPLAINT

EXHIBIT A  PAGE 65

1   have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged

2   herein.

3       163.    Pursuant to California Business & Professions Code sections 17200, *et seq.*,

4   Plaintiff and class members are entitled to restitution of the wages withheld and retained by

5   Defendants during a period that commences four years prior to the filing of the initial

6   complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to

7   Plaintiff and class members; and an award of attorneys' fees pursuant to California Code of

8   Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

9                          **TWELFTH CAUSE OF ACTION**

10      **Violation of California Business & Professions Code §§ 17200, *et seq.* –**

11                          **Unfair Business Practices**

12                          **(Against all Defendants)**

13      164.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

14   and every allegation set forth above.

15      165.    Defendants are "persons" as defined by California Business & Professions

16   Code section 17201, as they are corporations, firms, partnerships, joint stock companies,

17   and/or associations.

18      166.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

19   and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered

20   injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff

21   seeks to enforce important rights affecting the public interest within the meaning of Code of

22   Civil Procedure section 1021.5.

23      167.    Defendants' activities, namely Defendants' company-wide practice and/or

24   policy of not paying Plaintiff and class members all meal and rest period premiums due to

25   them under Labor Code section 226.7, deprived Plaintiff and class members of the

26   compensation guarantee and enhanced enforcement implemented by section 226.7.  The

27   statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to

28   compensate employees, and secondarily to shape employer conduct."  *Safeway, Inc. v.*

1  *Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7

2  were guaranteed to Plaintiff and class members as part of their employment with Defendants,

3  and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an

4  unfair business practice in violation of California Business & Professions Code sections

5  17200, *et seq.* (*Id.*)

6       168.   A violation of California Business & Professions Code sections 17200, *et seq.*

7  may be predicated on any unfair business practice.  In the instant case, Defendants' policies

8  and practices have violated the spirit of California's meal and rest period laws and constitute

9  acts against the public policy behind these laws.

10       169.   Pursuant to California Business & Professions Code sections 17200, *et seq.*,

11  Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory

12  benefits implemented by section 226.7 withheld and retained by Defendants during a period

13  that commences four years prior to the filing of the initial complaint; a permanent injunction

14  requiring Defendants to pay all statutory benefits implemented by section 226.7 due to

15  Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil

16  Procedure section 1021.5 and other applicable laws; and an award of costs.

17  <div align="center">**REQUEST FOR JURY TRIAL**</div>

18       Plaintiff requests a trial by jury.

19  <div align="center">**PRAYER FOR RELIEF**</div>

20       Plaintiff, on behalf of all class members, prays for relief and judgment against

21  Defendants, jointly and severally, as follows:

22       1.   For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in

23  excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff

24  reserves the right to amend his prayer for relief to seek a different amount.

25  <div align="center">**Class Certification**</div>

26       2.   That this case be certified as a class action;

27       3.   That Plaintiff be appointed as the representative of the Class and Subclass;

28       4.   That counsel for Plaintiff be appointed as class counsel.

EXHIBIT A  PAGE 67

**As to the First Cause of Action**

5.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order by willfully failing to provide all meal periods to Plaintiff and class members;

6.    That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

7.    For all actual, consequential, and incidental losses and damages, according to proof;

8.    For premiums pursuant to California Labor Code section 226.7(c);

9.    For pre-judgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

10.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

11.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Second Cause of Action**

12.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order by willfully failing to authorize and permit Plaintiff and class members to take all rest periods;

13.    That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

14.    For all actual, consequential, and incidental losses and damages, according to proof;

15.    For premiums pursuant to California Labor Code section 226.7(c);

16.    For pre-judgment interest on any unpaid rest period premiums from the date such amounts were due, or as otherwise provided by law;

17.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

18.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Third Cause of Action

19.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198, and the applicable IWC Wage Order by willfully failing to pay all overtime wages due to Plaintiff and class members;

20.    For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

21.    For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

22.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

23.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Fourth Cause of Action

24.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order by willfully failing to pay minimum wages to Plaintiff and class members;

25.    For general unpaid wages and such general and special damages as may be appropriate;

26.    For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

27.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

28.    For liquidated damages pursuant to California Labor Code section 1194.2; and

29.    For such other and further relief as the Court may deem equitable and

CLASS ACTION COMPLAINT

**EXHIBIT A  PAGE 69**

1    appropriate.

2                        **As to the Fifth Cause of Action**

3          30.    That the Court declare, adjudge and decree that Defendants violated the

4    recordkeeping provisions of California Labor Code section 226(a) and the applicable IWC

5    Wage Order as to Plaintiff and Subclass members, and willfully failed to provide accurate

6    itemized wage statements thereto;

7          31.    For all actual, consequential, and incidental losses and damages, according to

8    proof;

9          32.    For injunctive relief pursuant to California Labor Code section 226(h);

10         33.    For statutory penalties pursuant to California Labor Code section 226(e);

11         34.    For attorneys' fees and costs pursuant to California Labor Code section

12   226(e)(1); and

13         35.    For such other and further relief as the Court may deem equitable and

14   appropriate.

15                        **As to the Sixth Cause of Action**

16         36.    That the Court declare, adjudge and decree that Defendants violated California

17   Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages,

18   meal and rest period premiums, and/or reporting time pay owed at the time of termination of

19   the employment of Plaintiff and other terminated class members;

20         37.    For all actual, consequential and incidental losses and damages, according to

21   proof;

22         38.    For waiting time penalties according to proof pursuant to California Labor

23   Code section 203 for all employees who have left Defendants' employ;

24         39.    For pre-judgment interest on any unpaid wages from the date such amounts

25   were due, or as otherwise provided by law;

26         40.    For attorneys' fees pursuant to California Code of Civil Procedure section

27   1021.5, or as otherwise provided by law; and

28         41.    For such other and further relief as the Court may deem equitable and

CLASS ACTION COMPLAINT

1    appropriate.

2    **As to the Seventh Cause of Action**

3    42.    That the Court declare, adjudge and decree that Defendants violated California

4    Labor Code section 204 by willfully failing to timely pay Plaintiff and class members

5    overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay

6    during their employment;

7    43.    For all actual, consequential and incidental losses and damages, according to

8    proof;

9    44.    For statutory penalties according to proof pursuant to California Labor Code

10    section 210;

11    45.    For pre-judgment interest on any unpaid wages from the date such amounts

12    were due, or as otherwise provided by law;

13    46.    For attorneys' fees pursuant to California Code of Civil Procedure section

14    1021.5, or as otherwise provided by law; and

15    47.    For such other and further relief as the Court may deem equitable and

16    appropriate.

17    **As to the Eighth Cause of Action**

18    48.    That the Court declare, adjudge and decree that Defendants violated California

19    Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5)(A) by

20    failing to provide Plaintiff and class members with reporting time pay;

21    49.    For all actual, consequential and incidental losses and damages, according to

22    proof;

23    50.    For pre-judgment interest on any unpaid wages from the date such amounts

24    were due, or as otherwise provided by law; and

25    51.    For such other and further relief as the Court may deem equitable and

26    appropriate.

27    **As to the Ninth Cause of Action**

28    52.    That the Court declare, adjudge and decree that Defendants violated California

CLASS ACTION COMPLAINT

**EXHIBIT A  PAGE 71**

1   Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

2   related expenses and costs incurred by Plaintiff and class members;

3       53.    For unpaid business-related expenses and such general and special damages as

4   may be appropriate;

5       54.    For pre-judgment interest on any unpaid business-related expenses from the

6   date such amounts were due, or as otherwise provided by law;

7       55.    For all actual, consequential, and incidental losses and damages, according to

8   proof;

9       56.    For attorneys' fees and costs pursuant to California Labor Code section

10   2802(c), or as otherwise provided by law; and

11       57.    For such other and further relief as the Court may deem equitable and

12   appropriate.

13                    **As to the Tenth Cause of Action**

14       58.    That the Court declare, adjudge and decree that Defendants violated the

15   following California Labor Code provisions as to Plaintiff and other aggrieved employees:

16   226.7, 512(a), 516, and1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by

17   failing to authorize and permit all rest periods); 510 and 1198 (by failing to pay all overtime

18   compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum

19   wages for all hours worked); 226(a), 1174(d), and 1198 (by failing to provide accurate wage

20   statements and maintain accurate payroll records); 204 (by failing to timely pay all earned

21   wages during employment); 201 and 202 (by failing to timely pay all earned wages upon

22   termination); 212 and 213 (by failing to make earned wages accessible without discount, and

23   with authorization); 221 and 224 (by collecting and/or receiving wages already paid); 223 (by

24   secretly paying wages lower than required by statute); 1198 and the applicable IWC Wage

25   Order (by failing to provide reporting time pay); and 2802 (by failing to reimburse business

26   expenses);

27       59.    For civil penalties, pursuant to California Labor Code sections 210, 225.5,

28   226.3, 256, 558, 1174.5, 2699(a), (f), and (k), for violations of California Labor Code sections

CLASS ACTION COMPLAINT

**EXHIBIT A  PAGE 72**

201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

60.    For injunctive relief pursuant to California Labor Code sections 1194.5 and/or 2699(k) to bring Defendants into compliance with the requirements of the applicable IWC Wage Order and California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

61.    For attorneys' fees and costs pursuant to California Labor Code section 2699(k)(1), and any and all other relevant statutes, for Defendants' violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802;

62.    For pre-judgment and post-judgment interest as provided by law; and

63.    For such other and further relief as the Court may deem equitable and appropriate.

<center>**As to the Eleventh Cause of Action**</center>

64.    That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiff and class members all meal periods; failing to authorize and permit Plaintiff and class members to take all rest periods; failing to provide Plaintiff and class members all overtime wages due to them; failing to provide Plaintiff and class members all minimum wages due to them; failing to provide Plaintiff and class members accurate and complete wage statements; failing to maintain accurate payroll records for Plaintiff and class members; failing to timely pay Plaintiff and class members all earned wages during employment; failing to provide access to wages upon demand, without discount, and with authorization;  unlawfully deducting a portion of wages previously paid; secretly paying a lower wage; failing to pay Plaintiff and class members reporting time pay; and failing to reimburse Plaintiff and class members for business-related expenses, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

65.    For restitution of unpaid wages to Plaintiff and all class members and

<center>Page 51</center>

**EXHIBIT A  PAGE 73**

1   prejudgment interest from the day such amounts were due and payable;

2       66.   For the appointment of a receiver to receive, manage, and distribute any and all

3   funds disgorged from Defendants and determined to have been wrongfully acquired by

4   Defendants as a result of violations of California Business & Professions Code sections

5   17200, *et seq.*;

6       67.   For reasonable attorneys' fees and costs of suit incurred herein pursuant to

7   California Code of Civil Procedure section 1021.5; and

8       68.   For such other and further relief as the Court may deem equitable and

9   appropriate.

10               **As to the Twelfth Cause of Action**

11       69.   That the Court declare, adjudge and decree that Defendants' conduct of denying

12   Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes

13   an unfair business practice in violation of California Business and Professions Code sections

14   17200, *et seq.*;

15       70.   For restitution of the statutory benefits under section 226.7 unfairly withheld

16   from Plaintiff and class members and prejudgment interest from the day such amounts were

17   due and payable;

18       71.   For the appointment of a receiver to receive, manage, and distribute any and all

19   funds disgorged from Defendants and determined to have been wrongfully acquired by

20   Defendants as a result of violations of California Business & Professions Code sections

21   17200, *et seq.*;

22       72.   For reasonable attorneys' fees and costs of suit incurred herein pursuant to

23   California Code of Civil Procedure section 1021.5;

24       73.   For pre-judgment and post-judgment interest as provided by law; and

25   //

26   //

27   //

28   //

CLASS ACTION COMPLAINT

**EXHIBIT A  PAGE 74**

74.    For such other and further relief as the Court may deem equitable and
appropriate.

Dated: January 13, 2025

Respectfully submitted,

Capstone Law APC

By: _Roxanna Tabatabaeepour_

Roxanna Tabatabaeepour
Ryan Tish
Alexander Wallin

Attorneys for Plaintiff Kaliph Chenevert

CLASS ACTION COMPLAINT

**EXHIBIT A  PAGE 75**



# EXHIBIT "1"



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

ALEXANDER LIMA
310.712.8154 Direct
Alexander.Lima@capstonelawyers.com

November 6, 2024

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.govfa.net/308)

Subject:     *Kaliph Chenevert v. L & W Supply Corporation, et al.*

Dear PAGA Administrator:

This office represents Kaliph Chenevert in connection with his claims under the California Labor Code. Mr. Chenevert was an employee of L & W SUPPLY CORPORATION and/or AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. For the purpose of this letter, Mr. Chenevert collectively refers to these entities as "L&W."

The employers may be contacted directly at the addresses below:

L & W SUPPLY CORPORATION
300 RIVERSIDE PLAZA STE 200
CHICAGO, IL 60606

L & W SUPPLY CORPORATION
PO BOX 838
BELOIT, WI 53512

AMERICAN BUILDERS & CONTRACTORS
SUPPLY CO., INC.
ONE ABC PARKWAY
BELOIT, WI 53511

Mr. Chenevert intends to seek civil penalties, attorneys' fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Mr. Chenevert seeks relief on behalf of himself, the State of California, and other persons who are or were employed by L&W as a non-exempt, hourly paid employee in California and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

L&W employed Mr. Chenevert as an hourly paid, non-exempt employee from approximately March 2023 to February 2024. Mr. Chenevert worked for L&W as a Branch Helper/Stocker and Driver Assistant at its Palm Springs, California location. During his employment, Mr. Chenevert typically worked eight (8) or more hours per day and five (5) or more days per week. By the end of his

1

employment, Mr. Chenevert was compensated approximately $20.00 per hour. His job duties included, without limitation, assisting drivers with loading, spotting, and equipment maintenance, stocking and inventory tasks, and organizing and staging materials at jobsites.

L&W committed each of the following Labor Code violations against Mr. Chenevert, the facts and theories of which follow, making him an "aggrieved employee" pursuant to California Labor Code section 2699(c)(1): [1]

## L&W's Company-Wide and Uniform Payroll and HR Practices

L & W SUPPLY CORPORATION and AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. are Delaware corporations. Together, they are one of the nation's largest distributors of wallboard, insulation, steel framing, acoustical ceilings and other interior building materials for the needs of commercial and residential contractors. Upon information and belief, L&W maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Chicago, Illinois, or, Beloit, Wisconsin, for all non-exempt, hourly paid employees working for L&W in California, including Mr. Chenevert and other aggrieved employees. At all relevant times, L&W issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Mr. Chenevert and other aggrieved employees, regardless of their location or position.

Upon information and belief, L&W maintains a centralized Payroll department at its corporate headquarters in Chicago, Illinois, or, Beloit, Wisconsin, which processes payroll for all non-exempt, hourly paid employees working for L&W in California, including Mr. Chenevert and other aggrieved employees. Further, L&W issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Mr. Chenevert and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended. In other words, L&W utilized the same methods and formulas when calculating wages due to Mr. Chenevert and other aggrieved employees in California.

## Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods

California Labor Code sections 226.7, 512(a), 516, and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to provide meal periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and

---

[1] These facts, theories, and claims are based on Mr. Chenevert's experience and counsel's review of those records currently available relating to Mr. Chenevert's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Mr. Chenevert reserves the right to supplement this letter with additional facts, theories, and claims if he becomes aware of them subsequent to the submission of this letter.

2

the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, L&W had, and continues to have, a company-wide policy and/or practice of understaffing its facilities and jobsites while assigning heavy workloads, including pressure to keep up with time-sensitive deliveries, which has resulted in a lack of meal period coverage and prevented Mr. Chenevert and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. Further, L&W had a company-wide practice and/or policy of failing to schedule meal periods, which further caused Mr. Chenevert and other aggrieved employees to not be relieved of their duties for compliant meal periods.

As a result, Mr. Chenevert and other aggrieved employees had to work through all or part of their meal periods, had their meal periods interrupted, and/or had to wait extended periods of time before taking meal periods. For example, Mr. Chenevert was sometimes required to work straight through his meal periods in order to keep up with the demands of the workload and complete time-sensitive deliveries to multiple construction sites in a day. As another example, about 2-3 times per week, Mr. Chenevert's supervisors required him to return early from his meal periods to keep up with L&W's workload. Additionally, Mr. Chenevert sometimes took his meal periods late, after the fifth hour of work, due to the lack of coverage and L&W's failure to schedule meal periods.

Second, on information and belief, because L&W frowned upon employees accruing meal period premiums, L&W's management pressured Mr. Chenevert and other aggrieved employees to clock out for meal periods, even when they did not receive a compliant meal period. For example, Mr. Chenevert was required to clock out for his meal periods to record that he had received compliant meal periods on shifts when he had not, in fact, received these timely, uninterrupted meal periods.

Third, L&W did not provide Mr. Chenevert and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of 10 hours in one day. During his employment, Mr. Chenevert worked shifts in excess of ten (10) or more hours per day but was never provided a second 30-minute meal period. Mr. Chenevert and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

Moreover, L&W had a company-wide policy of requiring all newly hired employees to sign blanket meal period waivers at or near their time of hire. L&W took the position that non-exempt, hourly paid employees had waived their rights to first and/or second meal periods for the entirety of their employment and, on that basis, did not provide them with all meal periods to which they were entitled. Further, L&W's "Voluntary Waiver of First meal Periods" and "Voluntary Waiver of Second Meal Periods" forms require employees to provide written notice should they wish to revoke the waivers. L&W's presumption that meal periods would not be provided for shifts in excess of five (5) hours but less than six (6) hours and for shifts in excess of ten (10) hours but less than twelve (12) hours, due to blanket meal period waivers signed at or near the time of hire, and imposition on employees to revoke waivers by providing written notice, discouraged and impeded Mr. Chenevert and other aggrieved employees from taking all meal periods to which they were entitled.

3

Furthermore, an employer's obligation to provide a meal period is only "triggered" when the employer "employs an employee for a work period of more than five hours per day." *Brinker*, 53 Cal. 4th at 1039 ("If an employer engages, suffers, or permits anyone to work for a full five hours, its meal break obligation is triggered.").

> [A]fter the meal break obligation is triggered . . . an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay.

*Id.* (citing Cal. Labor Code § 226.7; Wage Order No. 5, subd. 11(A), (B)). That L&W required Mr. Chenevert and other aggrieved employees to sign meal period waivers simultaneously at or near their time of hire (as opposed to on a specific work day) renders them invalid and unenforceable, because L&W's obligation to provide Mr. Chenevert and other aggrieved employees with meal periods did not arise until they had employed them for a full five (5) hours.

At all times mentioned, L&W knew or should have known that as a result of its company-wide policies and/or practices, Mr. Chenevert and other aggrieved employees were prevented from being relieved of all duties and required to perform some of their assigned duties during meal periods. L&W further knew or should have known that it did not pay Mr. Chenevert and other aggrieved employees meal period premiums when meal periods were late, interrupted, shortened, and/or missed.

Moreover, L&W engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of this practice and/or policy, Mr. Chenevert and other aggrieved employees have not received premium pay for all missed, late, and interrupted meal periods.

Accordingly, L&W failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198. Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with the applicable IWC Wage Order and Labor Code sections 226.7, 512(a), 516, and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

### Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods

California Labor Code sections 226.7, 516, and 1198 and the applicable IWC Wage Order require employers to provide rest periods and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

4

To comply with its obligation to authorize and permit rest periods under California Labor Code
section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over
how employees spend their break time, and relieve their employees of all duties—including the
obligation that an employee remain on call. A rest period, in short, must be a period of rest."
*Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 273 (2016).

During the relevant time period, L&W regularly failed to authorize and permit Mr. Chenevert and
other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked
or major fraction thereof. As with meal periods, L&W's company-wide practices, including
understaffing and assigning heavy workloads, prevented Mr. Chenevert and other aggrieved
employees from being relieved of all duty to take rest periods. Additionally, L&W failed to schedule
rest periods, which, coupled with L&W's failure to provide adequate rest period coverage, further led
to Mr. Chenevert and other aggrieved employees not being authorized and permitted to take rest
periods.

Furthermore, upon information and belief, during the relevant time period, L&W maintained a
company-wide on-premises rest period policy, which effectively required that Mr. Chenevert and
other aggrieved employees remain on the work premises during their rest periods. Because Mr.
Chenevert and other aggrieved employees were restricted from leaving the premises during rest
periods, they were denied the ability to use their rest periods freely for their own purposes, such as
running personal errands. Thus, L&W effectively maintained control over Mr. Chenevert and other
aggrieved employees during rest periods.

As a result of L&W's practices and policies, Mr. Chenevert and other aggrieved employees worked
shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all
uninterrupted 10-minute rest periods to which they were entitled. For example, throughout his
employment, Mr. Chenevert had to regularly forgo at least one (1) of his rest periods each day,
because of the pressure to keep up with time-sensitive deliveries, lack of rest period coverage, and
L&W's failure to schedule rest periods for employees. When Mr. Chenevert was able to take rest
periods, they would often be interrupted by supervisors requiring him to work to complete inventory
counts, unload materials, or attend to customers.

L&W also has engaged in a company-wide practice and/or policy of not paying all rest period
premiums owed when compliant rest periods are not authorized and permitted. Because of this
practice and/or policy, Mr. Chenevert and other aggrieved employees have not received premium pay
for all missed rest periods.

Accordingly, L&W failed to authorize and permit all rest periods in violation of California Labor
Code sections 226.7, 516, and 1198. Mr. Chenevert and other aggrieved employees are entitled to
recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring
L&W into compliance with the applicable IWC Wage Order and Labor Code sections 226.7, 516,
and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

### Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable IWC Wage Order require employers
to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a
workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in
excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC

5

Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

L&W willfully failed to pay all overtime wages owed to Mr. Chenevert and other aggrieved employees. During the relevant time period, Mr. Chenevert and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, as stated, L&W had, and continues to have, company-wide policies and/or practices of understaffing its facilities and jobsites while assigning heavy workloads, including pressure to keep up with time-sensitive deliveries. L&W's policies and/or practices resulted in a failure to provide Mr. Chenevert and other aggrieved employees with adequate meal period coverage, and thus, Mr. Chenevert and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period. As also stated, L&W had a practice of failing to schedule meal periods which, in conjunction with the assignment of heavy workloads, further caused Mr. Chenevert and other aggrieved employees to not be relieved of their duties for compliant meal periods. For example, as stated, Mr. Chenevert worked through all or part of his meal periods due to lack of coverage and heavy workload. L&W did not compensate Mr. Chenevert and other aggrieved employees for the time they spent working off the clock during unpaid meal periods.

Second, as stated, on information and belief, because L&W frowned upon employees accruing meal period premiums, L&W's management pressured employees to clock out for meal periods, regardless of whether they had received a compliant meal period or not. Thus, L&W did not record all hours worked during meal periods, and Mr. Chenevert and other aggrieved employees performed work during meal periods for which they were not paid.

L&W knew or should have known that as a result of these company-wide practices and/or policies, Mr. Chenevert and other aggrieved employees were performing assigned duties off-the-clock during meal periods, and were suffered or permitted to perform work for which they were not paid. Because Mr. Chenevert and other aggrieved employees regularly worked shifts of eight (8) hours a day or more, or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Mr. Chenevert and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

L&W's failure to pay Mr. Chenevert and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198. Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with the applicable IWC Wage Order and Labor Code sections 510 and 1198, pursuant to Labor Code sections 558 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid
Minimum Wages**

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay
employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum
so fixed is unlawful. Compensable work time is defined in Wage Order No.7-2001 as "the time
during which an employee is subject to the control of an employer, and includes all the time the
employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. Tit. 8,
§ 11070(2)(H) (defining "Hours Worked").

As set forth above, due to L&W's policies and/or practices of understaffing its facilities and jobsites
while assigning heavy workloads, which included pressuring employees to meet time-sensitive repair
deadlines, and failing to schedule meal periods, Mr. Chenevert and other aggrieved employees were
prevented from taking all uninterrupted meal periods to which they were entitled and were required
to work off-the-clock during meal periods, have their meal periods interrupted, and/or were otherwise
not relieved of all duties during unpaid meal periods.

Also, as stated above, on information and belief, because L&W frowned upon employees accruing
meal period premiums, L&W's managers pressured employees to clock out for meal periods to
reflect compliant meal periods, even when they did not receive a compliant meal period. Thus, L&W
systematically failed to pay Mr. Chenevert and other aggrieved for actual hours worked during
unpaid meal periods because these hours were not always correctly recorded.

L&W did not pay at least minimum wages for all hours worked by Mr. Chenevert and other
aggrieved employees. Also, to the extent that these off-the-clock hours did not qualify for overtime
premium payment, L&W did not pay at least minimum wages for those hours worked off-the-clock
in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Accordingly, L&W regularly failed to pay at least minimum wages to Mr. Chenevert and other
aggrieved employees for all of the hours they worked in violation of California Labor Code sections
1182.12, 1194, 1197, 1197.1, and 1198. Mr. Chenevert and other aggrieved employees are entitled
to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to
bring L&W into compliance with the applicable IWC Wage Order and Labor Code sections 1182.12,
1194, 1197, 1197.1, and 1198, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage
Statements and Failure to Maintain Accurate Payroll Records**

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate,
and complete employment records. L&W has not provided Mr. Chenevert and other aggrieved
employees with properly itemized wage statements. Labor Code section 226(e) provides that if an
employer fails to comply with providing an employee with properly itemized wage statements as set
forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50 for
the initial pay period in which a violation occurs and $100 per employee for each violation in a
subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any
employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per
employee per violation in an initial citation and $1,000 per employee for each violation in a
subsequent citation, for which the employer fails to provide the employee a wage statement or fails to
keep the required records pursuant to Section 226(a).

7

During the relevant time period, L&W has knowingly and intentionally provided Mr. Chenevert and other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example, L&W issued uniform wage statements to Mr. Chenevert and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; the address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages, and the corresponding number of hours worked at each hourly rate. Specifically, L&W violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9).

Because L&W did not record the time Mr. Chenevert and other aggrieved employees spent working off-the-clock clock and deducted time from their records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), L&W did not list the correct amount of gross wages and net wages earned by Mr. Chenevert and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, L&W failed to accurately list the total number of hours worked by Mr. Chenevert and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Further, and separate from these violations, L&W issued uniform wage statements to Mr. Chenevert and other aggrieved employees that failed to correctly list the address of the legal entity of the actual employer in violation of 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment or in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, to obtain unemployment benefits, etc. Mr. Chenevert's and other aggrieved employees' wage statements incorrectly list the employer's address as "One ABC Parkway Beloit, WI 53511" but, according to the California Secretary of State's website, the correct address is "300 RIVERSIDE PLAZA STE 200 CHICAGO, IL 60606". *See example paystub below.*

| L&W Supply Corporation | One ABC Parkway Beloit, WI 53511 | (608) 368-2577 | | |
|---|---|---|---|---|
| Company | | Associate ID | Pay Period Begin | Pay Period End |

The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which aggrieved employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments . . . ." Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d). During the relevant time period, and in violation of Labor Code section

8

1174(d), L&W willfully failed to maintain accurate payroll records for Mr. Chenevert and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, L&W engaged in company-wide practices and/or policies of failing to record actual hours worked, and thereby failed to keep accurate records of work period and meal period start and end times for Mr. Chenevert and other aggrieved employees, in violation of section 1198. Also, in light of L&W's failure to provide Mr. Chenevert and other aggrieved employees with second 30-minute meal periods to which they were entitled, L&W kept no records of meal start and end times for second meal periods.

Because L&W failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Mr. Chenevert and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full. Instead, Mr. Chenevert and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with the applicable IWC Wage Order and Labor Code sections 226(a), 1174(d), and 1198, pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f), and (k).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, L&W failed to pay Mr. Chenevert and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, within any time period specified by California Labor Code section 204.

9

Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with Labor Code section 204, pursuant to Labor Code sections 210 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 201 and 202 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

During the relevant time period, L&W willfully failed to pay Mr. Chenevert and other aggrieved employees who are no longer employed by L&W all their earned wages, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, either at the time of discharge, or within seventy-two (72) hours of their leaving L&W's employ.

Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with Labor Code sections 201 and 202, pursuant to Labor Code sections 256 and/or 2699(a), (f), and (k).

**Violation of California Labor Code §§ 212 and 213 – Unlawful Direct Deposit and Discount of Wages**

California Labor Code section 212 prohibits employers from issuing any instruments for the payment of wages unless such instruments are negotiable and payable in cash on demand and without discount. California Labor Code section 213 permits employers to pay employees via direct deposit so long as the employee authorizes payment via direct deposit. Under California law, employers are also permitted to fulfill their wage payment obligations to employees by using payroll debit cards, but only under certain circumstances. Employer use of payroll debit cards is permitted only so long as the employee is given the choice as to whether to accept a payroll debit card as a form of payment. *Johnson v. Sunrise Senior Living Management, Inc.*, No. 16 CV 00443 BRO RAOx, 2016 WL 8929249, *9 (C.D. Cal. May 5, 2016). In *Johnson*, the court stated that the Division of Labor Standards Enforcement ("DLSE") decision deeming payroll debit card program permissible relied heavily on:

> . . . [T]he fact that the pay programs were optional, thereby allowing an employee to either participate in the program or receive his or her pay in some other way, such as direct deposit. Specifically, the DLSE opined that "[t]he success of the described procedure, in practice, will of course require that . . . it is presented as an *alternative* method for wage payment for which [the employees'] participation is optional." The DLSE also stated, "'[i]t is significant that the program does not mandate employee participation in the Money Network Service and that it is designed to provide an alternative for employees receiving their wage payment. Employees are also given the option of having their pay direct deposited into an account of their choosing . . . ." (internal citations omitted).

In addition, employers can only utilize payroll debit card programs if they provide employees with effective access to their wages without discount. The DLSE has interpreted Labor Code sections 212 and 213 as permitting employer use of payroll debit cards where the following requirements are satisfied:

> (1) [T]he "wages [are] payable at some established place of business in the state and there be at least 30 days of sufficient funds for payment,"
> (2) the employees are "fully informed of the service and procedures and that it is represented as an alternative method for wage payment for which their participation is optional,"
> (3) the employees receive "an itemized wage statement," and
> (4) "at least one transaction per pay period [is] without fee."

*Ortiz v. Randstad North America, L.P.,* No. C-13-5050 MMC, 2015 WL 6202298 at 3.

Further, the DLSE notes that the Labor Code manifests:

> ... [A] strong public policy that prohibits an employer (or its agent) from imposing conditions or obstacles which interfere with or prevent an employee's *(sic)* from promptly receiving their due wages *in full*. The imposition of a fee in order to readily *access* one's earned and paid wages under a payroll card program which is designed to discharge the employer's wage payment obligations could impermissibly interfere with an employee's receipt of paid wages by creating a financial condition which would have the *effect* of reducing or discounting wages because such fee would be charged against the same account in which wages are deposited. (emphases in original)

*DLSE opinion letter* 2008.07.07. The DLSE has also acknowledged that payroll service providers "effectively act as *agents* of the client employers in discharging the employer's wage payment obligations." *Id.* In a second opinion letter, the DLSE stated that "[w]hile the Labor Code does not purport to regulate the specific arrangements between employers and payroll service providers, both an employer and, under the express language in Labor Code § 212- their *agent*, must comply with its requirements." *DLSE opinion letter* 2008.07.07-2.

During the relevant time period, L&W had an agreement with a payroll service provider, Wisely, for the issuance of payroll cards to employees, including Mr. Chenevert and other aggrieved employees, to discharge its wage payment obligations to its employees. On information and belief, L&W had a practice of and/or policy of automatically issuing payroll debit cards to departing employees without giving them the option to elect their form of payment for their final wages. For example, Mr. Chenevert received his final wages on a payroll debit card without a choice of an alternate method of payment, such as a written check. Instead, L&W automatically enrolled Mr. Chenevert in its payroll debit card program for the purpose of issuing Mr. Chenevert's final wages to him without prior, voluntary approval from Mr. Chenevert.

Moreover, under L&W's payroll debit card program, Mr. Chenevert and other aggrieved employees did not have easy access to the entirety of their wages without incurring a fee. Mr. Chenevert and other aggrieved employees were unable to withdraw their entire wages in at least one transaction without incurring a fee, which resulted in a discount in their pay. For example, Mr. Chenevert was subjected to transaction fees when withdrawing his wages from an out-of-network ATM. Thus,

11

L&W's payroll debit card program was, and continues to be, unlawful as it did not give Mr. Chenevert and other aggrieved employees access to their entire wages without discount and without delay.

California courts recognize a policy favoring the full and prompt payment of wages to employees. L&W's payroll card program is inconsistent with this policy because L&W's program is involuntary and presents a number of obstacles and hurdles that, together, make it difficult for Mr. Chenevert and other aggrieved employees to access their entire wages without discount and without delay, in violation of California Labor Code sections 212 and 213. Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with Labor Code sections 212 and 213, pursuant to Labor Code section 225.5 and/or 2699(a), (f), and (k).

### Violation of California Labor Code §§ 221 and 224 – Unlawful Deductions

California Labor Code section 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. California Labor Code section 224 also provides in pertinent part that it is lawful to withhold a portion of the employee's wages if "a deduction is expressly authorized in writing by the employee."

During the relevant time period, upon information and belief, L&W unlawfully deducted a portion of wages previously paid to Mr. Chenevert and other aggrieved employees in violation of California Labor Code section 221. On information and belief, L&W systematically, and on a company-wide basis, provided Mr. Chenevert and other aggrieved employees with payroll debit cards as payment of their wages and/or final wages. Under L&W's payroll debit card program, Mr. Chenevert and other aggrieved employees were assessed various fees in connection with their use of the payroll debit cards. For example, as described above, Mr. Chenevert and other aggrieved employees were required to pay out-of-network ATM withdrawal fees and/or other fees to obtain and/or spend their earned and due wages. The fees charged to Mr. Chenevert and other aggrieved employees resulted in a discount of their wages.

L&W's practice, which resulted in a discount of wages to employees, is tantamount to taking deductions from Mr. Chenevert's and other aggrieved employees' paychecks without their written authorization and therefore constitutes an unlawful deduction of wages, in violation of Labor Code sections 221 and 224. Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with Labor Code sections 221 and 224, pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (k).

### Violation of California Labor Code § 223 – Secret Payment of Lower Wages

California Labor Code section 223 makes it unlawful for an employer to secretly pay wages lower than required by statute while purporting to pay legal wages.

During the relevant time period, L&W willfully and systematically issued payroll debit cards to Mr. Chenevert and other aggrieved employees that discounted their wages by charging various fees in connection with the use of the payroll debit cards. L&W's payroll debit card program resulted in the payment of less than statutorily required wages to Mr. Chenevert and other aggrieved employees.

12

Thus, L&W paid Mr. Chenevert and other aggrieved employees lower wages than those they were entitled to while purporting that Mr. Chenevert and other aggrieved employees were properly paid.

L&W's failure to pay Mr. Chenevert and other aggrieved employees the correct designated wage, while purporting to pay legal wages, is a violation of California Labor Code section 223. Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with Labor Code section 223, pursuant to Labor Code sections 225.5 and/or 2699(a), (f), and (k).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11070 Subdivision 5(A) – Failure to Pay Reporting Time Pay**

California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11070(5)(A) provides that "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." The "primary purpose of the reporting time regulation" is "to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer." *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556 (2012).

During the relevant time period, L&W violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5)(A), because L&W failed to pay Mr. Chenevert and other aggrieved employees reporting time pay when they reported to work for their usual or scheduled shift but were put to work for less than half of their usual or scheduled day's work.

L&W had a company-wide practice of sending Mr. Chenevert and other aggrieved employees home early from their shifts, including before they had worked at least half of their usual or scheduled shift, but would not pay Mr. Chenevert and other aggrieved employees for half of their scheduled shift. For example, when scheduled to work a shift of eight (8) hours, L&W's managers sent Mr. Chenevert home one (1) hour after the start of his shift. Although Mr. Chenevert and other aggrieved employees reported to work based on the schedule that was provided to them, L&W would send them home before they worked at least half of their usual or scheduled shifts. When this occurred, L&W did not pay Mr. Chenevert and other aggrieved employees for at least half of their scheduled day's work or the minimum reporting time pay.

Accordingly, Mr. Chenevert and other aggrieved employees were not properly compensated with reporting time pay in violation of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11070(5)(A). Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with the applicable IWC Wage Order and Labor Code section 1198, pursuant to Labor Code sections 2699(a), (f), and (k).

13

EXHIBIT A  PAGE 89

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). The applicable wage order, IWC Wage Order No. 7-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." IWC Wage Order No. 7-2001 further provides that: "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer."

During the relevant time period, Mr. Chenevert and other aggrieved employees were required to use their personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties, but L&W failed to reimburse them for the costs of their work-related mobile device expenses. For example, Mr. Chenevert was required to use his personal cellular phone to communicate with his supervisors to discuss the progress of assignments and to take and send pictures of work completed, and for calculating measurements. Although L&W required Mr. Chenevert and other aggrieved employees to utilize their personal mobile devices and/or mobile data to carry out their work-related responsibilities, L&W failed to reimburse them for these costs.

Also, during the relevant time period, L&W required Mr. Chenevert and other aggrieved employees to wear uniforms bearing the L&W company logo, including high visibility shirts and pants. Due to the nature of construction work, Mr. Chenevert's uniforms would become sweaty, soiled, and/or stained by dirt and drywall materials, such that they were unable to mix these clothes in with other laundry. As a result, he had to wash his uniform items separately from his regular clothing, thus incurring additional laundry expenses for the upkeep of his uniforms. Thus, L&W failed to maintain uniforms they required Mr. Chenevert and other aggrieved employees to wear during their shifts and forced them to incur the cost of maintaining employee uniforms.

L&W could have provided Mr. Chenevert and other aggrieved employees with the actual equipment for use on the job, such as company mobile devices as well as access to laundering services. Or, L&W could have reimbursed employees for the costs of their mobile device usage and laundering expenses or provided a uniform maintenance allowance. Instead, L&W passed these operating costs onto Mr. Chenevert and other aggrieved employees. At all relevant times, Mr. Chenevert did not earn at least two (2) times the minimum wage.

Thus, L&W had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Mr. Chenevert and other aggrieved employees are entitled to recover civil penalties, attorneys' fees, costs, and interest thereon, and seek injunctive relief to bring L&W into compliance with the applicable IWC Wage Order and Labor Code section 2802, pursuant to Labor Code section 2699(a), (f), and (k).

14

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid . . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." L&W, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Mr. Chenevert's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Mr. Chenevert seeks the remedies set forth in Labor Code section 558 for himself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 1194.5, 2699(a), 2699(k), 2699.3(a) and 2699.3(c), 2699.5, and 558, Mr. Chenevert, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties and injunctive relief for himself, all other aggrieved employees, and the State of California against L&W for violations of California Labor Code sections 201, 202, 204, 212, 213, 221, 223, 224, 226(a), 226.7, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, and 2802.

Therefore, on behalf of all aggrieved employees, Mr. Chenevert seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

**Pre-Litigation Demand**

This notice shall further serve as Mr. Chenevert's reasonable attempt to settle his dispute with L&W prior to litigation. Pursuant to *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004), this notice serves to inform L&W of Mr. Chenevert's aforementioned grievances and the proposed remedies as detailed below, while affording L&W a reasonable opportunity to satisfy Mr. Chenevert's demands.

Demand is hereby made that L&W shall, within 30 calendar days of this notice, agree, in writing to the following corrective actions:

1. L&W shall pay Mr. Chenevert and all other aggrieved employees employed by L&W at any time during the past three years from the date of this notice unpaid wages and compensation for the above-referenced violations.

2. L&W shall comply with all California labor laws and ensure that its non-exempt employees are paid overtime wages and minimum wages for all hours worked and provided lawful meal and rest periods, and paid all reporting time pay.

3. L&W shall conduct a survey or interview all current and former aggrieved employees in California who worked for L&W in the past three years to obtain information from them regarding the above-referenced violations, including, but not limited to: the number of meal periods which were not provided; the number of rest periods which were not authorized and permitted; and the number of employees who were required to pay for mobile device

15

expenses, uniform maintenance, or other expenditures in the discharge of their duties, with the investigation to be completed within 60 days.

4.  L&W shall pay each aggrieved employee one hour of pay at his or her regular rate of pay for each work day he or she was not provided one or more meal periods, as required by Labor Code sections 226.7, 512(a), 516, and 1198.  L&W also shall pay each aggrieved employee one hour of pay at his or her regular rate of pay for each work day he or she was not authorized and permitted one or more rest periods, as required by Labor Code sections 226.7, 516, and 1198.

5.  L&W shall reimburse those aggrieved employees who were required to pay for any business expenses incurred for L&W's benefit, including, but not limited to, costs of mobile device usage, uniform maintenance, or other expenditures, as required by Labor Code section 2802.

6.  L&W shall pay accrued legal interest to all aggrieved employees at the rate of 10% per annum for said unpaid wages.

7.  L&W shall pay each aggrieved employee unpaid wages and compensation for violations arising from its unlawful use of payroll debt cards, including unlawful direct deposit and discount of wages (Labor Code sections 212 and 213), unlawful deductions (Labor Code sections 221 and 224), and secret payment of lower wages (Labor Code section 223).

8.  L&W shall provide all aggrieved employees employed by L&W at any time during the past three years from the date of this notice corrected wage statements that include the requisite information set forth in Labor Code section 226(a).

9.  L&W shall pay waiting time penalties, equal to 30 days of pay, to each former aggrieved employee who was not paid all wages due as described herein.

10. L&W shall provide aggrieved employees who are required to report for work and do report but are not put to work or are furnished less than half their usual or scheduled day's work, with pay for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the aggrieved employee's regular rate of pay.

11. L&W shall pay all penalties arising from the violations of the Labor Code and IWC Wage Order sections referenced above and pursuant to PAGA, Labor Code sections 2698, *et seq.*, including, but not limited to, penalties under Labor Code sections 210, 225.5, 226.3, 256, 558, 1174.5, 1197.1, and 2699, and IWC Wage Order No. 7-2001, section 20.

16

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Alexander Lima
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Alexander Lima

Copy: L & W SUPPLY CORPORATION (via U.S. Certified Mail); AMERICAN BUILDERS & CONTRACTORS SUPPLY CO., INC. (via U.S. Certified Mail)